IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OLD LC, INC., *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 19-11791 (BLS)<br><br>Jointly Administered |
| Official Committee of Unsecured Creditors of Old LC, Inc., et al., for and on behalf of the estates of Old LC, Inc., et al.;<br><br>       Plaintiff,<br><br>v.<br><br>Upfront V, LP, Breakwater Credit Opportunities Fund, L.P.; Upfront GP V, LLC; Mark Suster; Dana Kibler; Gregory Bettinelli; Saif Mansour; Aamir Amdani; Eric Beckman; Darrick Geant; and Joseph Kaczorowski | Adv. No. 20-51002 (BLS) |

## MOTION OF UPFRONT V, L.P., UPFRONT GP V, LLC, MARK SUSTER, DANA KIBLER AND GREGORY BETTINELLI TO DISMISS FIRST AMENDED COMPLAINT AND OBJECTION TO CLAIMS AND MOTION TO STRIKE PRAYER FOR COMPENSATORY DAMAGES

Pursuant to Rules 12(b)(6), 12(e) and 12(f) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, defendants Upfront V, L.P., Upfront GP V, LLC, Mark Suster, Dana Kibler and Gregory Bettinelli (collectively, the "Upfront Defendants") hereby move to (1) dismiss Counts I, II, III, IV, and IX (collectively, the "Upfront Counts") of that certain *First*

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc. and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is 3401 Pasadena Ave, Los Angeles, CA 90031.

*Amended Complaint and Objection to Claims* (the "<u>Complaint</u>")[2] filed by the Official Committee of Unsecured Creditors of Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (collectively, "<u>Loot Crate</u>" or the "<u>Debtors</u>") in the above-captioned adversary proceeding; and (2) strike the Complaint's request for compensatory damages.

## PRELIMINARY STATEMENT

1.          This suit arises out of the demise of Loot Crate, which operated a subscription box service from 2012 through 2019 and was founded, managed, and majority-owned by Chris Davis ("<u>Davis</u>"), the Debtors' incompetent CEO whose failings demonstrably and single-handedly caused the bankruptcy of the Debtors.  Rather than target Davis, and those directors he appointed to do his bidding, the Committee has chosen to bring a breach of fiduciary duty action against those with presumably deeper pockets but who had no actual control over the Debtors and share no responsibility for their collapse: (1) Upfront V, LP ("<u>Upfront</u>"), the Debtors' minority shareholder, (2) Upfront GP V, LLC, Upfront's general partner, who had no involvement whatsoever with the Debtors, (3) the three individuals who Upfront appointed to serve as the Series A Director (each of whom served at different times), and (4) Breakwater Credit Opportunities Fund, L.P., Loot Crate's senior secured lender, and individuals associated therewith (the "<u>Breakwater Defendants</u>").

2.          Upfront's relationship with Loot Crate began with its 2016 participation in a Series A financing round, in which Upfront invested $12.5 million in exchange for, *inter alia*, preferred shares, the ability to designate a *single* member of Loot Crate's five-person board of directors (the "<u>Series A Director</u>") and approval rights over additional preferred share issuances. While Upfront's managers desired to mentor and partner with Davis to help grow the business,

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

Upfront was repeatedly forced to contend with significant mismanagement by Davis, which Upfront was never able to remedy. Unfortunately for all stakeholders in these Cases, Davis's control over each aspect of Loot Crate's management prevented Upfront from being able to effectuate the changes required.

3.     Based on conclusory, vague, contradictory, and some demonstrably false allegations, the Committee claims that the Series A Director and Upfront, based on its exertion of control over the Debtors, breached their fiduciary duties by creating a cash crisis in an effort to force unfavorable funding terms on the Debtors, none of which were ever imposed. Each of the Complaint's premises is fatally flawed and the Complaint does not meet basic pleading requirements under applicable law. It must be dismissed.

4.     First, the Complaint does not and cannot allege facts to support that Upfront owed fiduciary duties to the Debtors, nor that any Series A Director cast any dispositive vote or was able to exercise control over the Debtors. Indeed, at all times Davis, not Upfront, controlled all aspects of the Debtors, including their financing efforts. At most, Upfront held a never-utilized consent right, *stemming from and authorized under the Debtors' Articles of Incorporation*, over the Debtors' issuance of additional preferred stock. Yet such a right cannot form the basis of a fiduciary duty nor can the exercise thereof be a breach of fiduciary duty. As for the individual directors, the Complaint impermissibly relies on group pleading, even though there was only ever one (and not even at all times) Series A Director serving on the Board.

5.     Further, the Complaint fatally does not (and cannot) allege facts demonstrating that any Upfront Defendant created a cash crisis. The Complaint does not explain how the purported urging of "unfavorable funding terms" (which was actually a proposed ***equity*** investment to address the Company's ongoing liquidity needs and which might have actually

saved the company) was an exercise of control or breach of duty, particularly since that transaction was never consummated. Finally, the Complaint does not allege any damages that are not entirely speculative. There is no allegation, much less evidence, that the Debtors would have obtained alternative funding sufficient to allow the Debtors to survive.

6. The Complaint adds additional, mostly duplicative counts for aiding and abetting a breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and civil conspiracy, and a final count objecting to Upfront's proof of claim filed against the Debtor. These counts too should be dismissed. For both the aiding and abetting and civil conspiracy counts, there are no underlying breaches of fiduciary duty on which the additional claims are founded, and the Complaints' lack of a cognizable damages theory is also fatal thereto. The implied covenant of good faith and fair dealing only applies where a contract is silent concerning the complained-of acts, but the Complaint does not allege any such missing terms. Indeed, the Private Equity Agreements at issue, referenced in the Complaint, and Articles of Incorporation themselves explicitly authorize Upfront's conduct. Finally, the Complaint's count objecting to Upfront's claim must be dismissed as it contains no allegation with respect to the claim's validity beyond the bare conclusion that it is not an "actual, authorized liability of any of the Debtors."

7. The Committee is not entitled to relief under any set of facts or theories that can be alleged on a principled basis. The Committee is in possession of virtually all documents possessed by the Upfront Defendants and, with access to all relevant information, has not made any cognizable claims.[3] The entire Complaint should be dismissed with prejudice.

---

[3] The Debtors have already conducted extensive Rule 2004 discovery against the Upfront Defendants as well as non-defendant third parties. In response, the Upfront Defendants produced over 10,000 documents consisting of over 40,000 pages to the Debtors, which included virtually all of the documents and data already in their possession relating to the Debtor, which are in the possession of the Committee.

**RELEVANT BACKGROUND**

**A.      The Complaint.**

        8.      On November 2, 2020, the Committee filed an initial complaint against Defendants.  In response, the Upfront Defendants filed a motion to dismiss the initial complaint. Before the initial motion to dismiss was heard, the Committee filed its amended Complaint.  The Complaint contains five counts naming at least one of the Upfront Defendants: Count I for breach of fiduciary duties against all Upfront Defendants; Count II for aiding and abetting breach of fiduciary duty against all Upfront Defendants; Count III for breach of the implied covenant of good faith and fair dealing against Upfront; Count IV for civil conspiracy against all Upfront Defendants; and Count IX objecting to the Defendants' Claims against all Upfront Defendants.

**B.      The Private Equity Agreements.**

        9.      The Complaint explicitly references and relies on the terms of the Private Equity Agreements dated May 10, 2016, true and correct copies of which are attached hereto as **Exhibit A**,[4] by which Upfront obtained approximately 45% of the newly-issued Series A Preferred Stock of Loot Crate (***equating to ownership of approximately 10.5% of the Debtors on a fully converted basis***) and was granted the right to designate a single member of the Board. Together, Upfront and Breakwater held 55% of the Series A Preferred Stock, which fact the Complaint deceptively states to suggest that Upfront and Breakwater together held a majority stake.  The truth is that their combined 55% ownership relates to Series A Preferred Stock only, and on a converted basis equated to 12.8%.  Further, the Private Equity Agreements were negotiated at arms' length with an independent board on which Upfront had no representation.

---

[4] In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *Mele v. Federal Reserve Bank of N.Y.*, 359 F.3d 251,255 n. 5 (3d Cir. 2004); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

5

**ARGUMENT**

**A.     Pleading Standards.**

    **a.   Rules 8(a) and 12(b)(6)**

          10.     Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7008, requires a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

          11.     A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint, including, *inter alia*, whether the plaintiff has met the requirements of Rule 8(a)(2). If a claim as pleaded is insufficient because it lacks an element necessary to establish the claim under any legal theory, a court must dismiss the claim for violating the pleading requirements of the Federal Rules of Civil Procedure. *See Falkenberg Capital Corp. v. Dakota Cellular, Inc.*, 925 F. Supp. 231, 236-39 (D. Del. 1996) (dismissing claims because they did not entitle the claimant to relief under any reasonable reading of the pleadings).

          12.     A court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

          13.     Thus, a complaint must contain "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted; quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

14.     "[T]o survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Committee fails to satisfy these standards.  As set forth herein, the Complaint fails to include essential factual allegations, but instead relies on conclusory statements to support implausible claims.

**b.  Rules 10 and 12(e)**

15.     Rule 10(b) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7010, requires that "each claim founded on a separate transaction or occurrence ... must be stated in a separate count" if doing so would promote clarity. Fed. R. Civ. P. 10(b). The use of separate counts becomes increasingly important when a plaintiff files suit against multiple of defendants and alleges various claims against each. *Walker v. Wentz*, No. 06-cv-2411, 2008 U.S. Dist. LEXIS 11592, at *17, 2008 WL 450438 (M.D. Pa. Feb. 15, 2008); *Grew v. Hopper*, No. 2:07-CV-550, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008) (dismissing complaint for failure to comply with Rule 10(b) when plaintiff attempted to

allege numerous causes of action against various defendants without pleading separate counts); *Folkman v. Roster Fin. LLC*, No. Civ. 05-2099, 2005 WL 2000169, at *4 (D.N.J. Aug. 16, 2005) ("When a complaint is brought against several distinct defendants, separate statements with regard to each defendant are particularly helpful in apprising the individual defendants of claims pertaining only to them." (internal quotations omitted)); *Boyer v. Lehigh Valley Hisp. Ctr.*, No. Civ. A. 89-7315, 1990 WL 94038, at *7 (E.D. Pa. July 2, 1990) (same).

16.     A Rule 12(e) motion tests the legal sufficiency of the plaintiff's requirements of pleading practice established by Rule 10. *Walker v. Wentz*, 2008 U.S. Dist. LEXIS 11592, at *17; *Boyer*, 1990 WL 94038, at *7; *see also Wadhwa v. Sec'y*, 505 Fed. Appx. 209, 214 (3d Cir. 2012) (quoting *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)) (explaining that a motion for a more definite statement "'is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading'").

17.     The Committee's "group pleading" is not permissible here. *See*, *e.g.*, *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 739 (Bankr. W.D. La. 2008) (dismissing complaint alleging, *inter alia*, breach of fiduciary duty where complaint employed group pleading and failed to identify each defendant's role in wrongful conduct); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (complaint cannot "lump multiple defendants together" in alleging civil conspiracy). The Committee relies entirely on group pleading throughout the Upfront Counts.

18.     The problem with "group pleading" is that breach of fiduciary duty is "determined on an individual—rather than a collective—basis." *J.P. Morgan Trust Co. Nat'l Ass'n v. Cleberg (In re Farmland Indus., Inc.)*, 335 B.R. 398, 410 (Bankr. W.D. Mo. 2005)

(dismissing claims against individual director where there were no "specific allegations" of wrongdoing by that defendant); *Mukamal v. Bakes*, 383 B.R. 798, 827 (S.D. Fla. 2007) (dismissing breach-of-fiduciary duty claims because the complaint failed to "allege individualized allegations as to each [defendant] from which an assessment can be made under the applicable criteria").

19.     The Committee employs impermissible group pleading throughout the Complaint, and therefore fails to satisfy the standards of Rules 10 and 12(e).  Specifically, the Complaint contains a single count for breach of fiduciary duty encompassing all Defendants, including the Breakwater Defendants.  Even among the Upfront Defendants, none are similarly situated.  The individual Defendants on Loot Crate's board of directors served at different times, and were never overlapping in their service.

**B.     Count I Must Be Dismissed as Plausible Claims for Breaches of Fiduciary Duty Have Not Been Alleged.**

20.     The breach of fiduciary duty claims require the Committee to plausibly establish the following two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty.  *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010); *Zrii, LLC v. Wellness Acquisition Group, Inc.*, 2009 Del. Ch. LEXIS 167, 2009 WL 2998169, at *11 (Del. Ch. Sept. 21, 2009).

21.     Although a claim for breach of fiduciary duty has only two formal elements, a plaintiff will not be awarded a meaningful remedy without additional showings that parallel the other elements of a traditional common law tort claim. *See Ravenswood Inv. Co., L.P. v. Estate of Winmill*, 2018 Del. Ch. LEXIS 96, 2018 WL 1410860, at *2, 19, 25 (Del. Ch. Mar. 21, 2018) (awarding nominal damages for breach of duty); *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, 2014 Del. Ch. LEXIS 205, 2014 WL 5192179, at *1, 9, 13 (Del. Ch. Oct.

10, 2014) (same); *In re Nine Sys. Corp. S'holders Litig.*, 2014 Del. Ch. LEXIS 171, 2014 WL 4383127, at *51 (Del. Ch. Sept. 4, 2014) (same); *Oliver v. Bos. Univ.*, 2006 Del. Ch. LEXIS 75, 2006 WL 1064169, *25, 29, 30, 32, 34-35 (Del. Ch. Apr. 14, 2006) (same); *but see In re Katy Indus., Inc.*, 590 B.R. 628, 640-41 (Bankr. D. Del. 2018), *rev'd in part on other grounds sub nom. In re KII Liquidating, Inc.*, 607 B.R. 398 (D. Del. 2019) (finding damages and causation as element of claim for breach of fiduciary duty brought under Delaware law).[5]

> **a.**      **Existence of Fiduciary Duties of Upfront Defendants.**

> > **i.**      **Defendant Upfront Did Not Owe Debtors Fiduciary Duties at Any Time.**

22.      Under Delaware law, a "shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation." *Thermopylae Capital Partners, L.P. v. Simbol, Inc.*, No. 10619-VCG, 2016 Del. Ch. LEXIS 15, *43, 2016 WL 368170 (Del. Ch. Jan. 29, 2016) (*quoting Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)). A shareholder will be considered "controlling" if it either "owns more than 50% of the voting power of the company, or exercises 'actual control' over the board of directors during the course of a particular transaction." *Zimmerman v. Crothall*, 62 A.3d 676, 699-700 (Del. Ch. 2013).

> > **1.**      **Upfront Is Not Alleged to be a Controlling Shareholder by Virtue of Share Ownership.**

23.      Upfront is not alleged to be a majority shareholder of the Debtors. *See Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113 (Del. 1994) (observing that a

---

[5] Although damages may not be a required element in pleading a cause of action for breach of fiduciary duty, the Complaint provides no theory of damage to Loot Crate that is not entirely speculative. Specifically, its theory appears to be that but for the Upfront Defendants' conduct, Loot Crate would have been able to reach a financing deal that would have prevented these Cases. There is no evidence or facts alleged that any such financing would have been consummated, in particular because there was no Series A Director between January and July of 2018, during which time the Debtors did not obtain sufficient financing to keep the company afloat.

stockholder becomes a fiduciary if it "owns a majority interest in . . . the corporation" (internal quotation marks omitted)); *In re PNB Hldg. Co. S'holders Litig.*, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) ("Under our law, a controlling stockholder exists when a stockholder . . . owns more than 50% of the voting power of a corporation . . . ."); *Williamson v. Cox Commc'ns, Inc.*, 2006 WL 1586375, at *4 (Del. Ch. June 5, 2006) ("A shareholder is a 'controlling' one if she owns more than 50% of the voting power in a corporation . . . ."). Indeed, the Debtors have acknowledged that Upfront is a *minority* shareholder of Debtor Old LC Parent, Inc. (formerly Loot Crate Parent, Inc.), owning 10.527% of the shares of Loot Crate Parent, Inc.[6]

24.     Further, Upfront and Breakwater, together, did not hold more than 50% of the voting power of Loot Crate. Although the Complaint deceptively suggests that Upfront and Breakwater together owned a controlling position, their combined 55% ownership *only relates to the Series A Preferred Stock*, which never provided Upfront and Breakwater, even jointly, with a majority voting position or control. Their combined minority position equates to 12.8% of Loot Crate Parent, Inc. In contrast, Loot Crate Parent does have a controlling shareholder who controls 50.5761% of its shares and who at all times exercised actual control: Davis.

25.     Accordingly, Upfront is not a controlling shareholder under any definition, and did not owe the Debtors any fiduciary duties on that basis.

## 2. The Complaint's Allegations of Actual Control are Insufficient.

26.     A defendant without majority voting power can be found to owe fiduciary duties if he <u>in fact</u> exercises control over the business and affairs of the corporation. *Lynch*, 638 A.2d at 1113 (another means of pleading control is to allege facts that support a reasonable inference that the defendant <u>in fact</u> "exercise[d] control over the business affairs of the

---

[6] *Declaration of Stuart Kaufman in Support of First Day Motions and Related Relief*, at ¶ 14(c) [Docket No. 4].

corporation"). "The bare conclusory allegation that a minority stockholder possessed control is insufficient" to survive a motion to dismiss. *In re Morton's Restaurant Grp., Inc. S'holders Litig.*, 74 A.3d 656, 664 (Del. Ch. 2014) (finding that conclusory allegations of the exercise of actual domination and control by minority stockholder insufficient to withstand motion to dismiss under Rule 12(b)(6)); *In re Primedia Inc. Deriv. Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006). Rather, "the Complaint must contain well-pled facts showing that the minority stockholder 'exercised actual domination and control over . . . [the] directors.'" *Thermopylae*, 2016 Del. Ch. LEXIS 15, at *43; *Morton's Rest. Grp.*, 74 A.3d at 664-65 (same); *In re Sea-Land Corp. S'holder Litig.*, No. 8453, 1988 Del. Ch. LEXIS 65, 1988 WL 49126, at *384 (Del. Ch. May 13, 1988) (same); *see also PNB Hldg.*, 2006 WL 2403999, at *9 (plaintiff must allege facts supporting a reasonable inference that a defendant or group of defendants exercised sufficient influence "that they, as a practical matter, are no differently situated than if they had majority voting control"). For example, a plaintiff may plead the defendant, "as a practical matter, possesses a combination of stock voting power and managerial authority that enables him to control the corporation, if he so wishes." *In re Cysive, Inc. S'holders Litig.*, 836 A.2d 531, 553 (Del. Ch. 2003).

27. A plaintiff must plead and establish that the defendant exercised actual control; the "*potential* ability to exercise control is not equivalent to the actual *exercise* of that ability." *Sea-Land*, 1987 Del. Ch. LEXIS 439, *13 (emphasis in original); *see also Williamson*, 2006 Del. Ch. LEXIS 111 at *4 ("potential ability to exercise control is not sufficient"); *Gilbert v. El Paso Co.*, Del. Ch., 490 A.2d 1050, 1056 (1984), *aff'd*, Del. Supr., 575 A.2d 1131 (1990) (holding that claims of breach of fiduciary duty "must subsist on the actuality of a specific relationship, not its potential").

DOCS_LA:334843.4

28.     The Complaint conclusorily alleges that Upfront exercised actual and pervasive control over Loot Crate, as follows:

> Defendant Upfront exercised actual and pervasive control over Loot Crate and its governance apparatus through its active coordination and scheming with Breakwater, which placed Upfront in a position no different than if Upfront had majority voting control. . . . Loot Crate was unable to take certain actions (such as increasing or decreasing the number of authorized common or preferred shares and/or changing the number of directors) without obtaining an affirmative vote or written consent of a majority of the voting power of the Preferred Stock.

Complaint, at ¶ 228.  "Coordination and scheming with Breakwater", even if it occurred, does not support an allegation that Upfront actually controlled the Debtors and certainly not that the "pervasively" controlled them.  The control over minor matters is not sufficient control to make someone a fiduciary.  Further, Loot Crate's requirement to obtain Upfront's consent prior to taking certain actions is (a) a contractual right that Upfront held, and (b) there is no allegation that Upfront ever exercised that right.  This is precisely the type of conclusory allegation of "actual control" that cannot withstand a 12(b)(6) motion.

### a.  Complaint Does Not Adequately Allege Facts Establishing That Upfront Controlled Board.

29.     The Complaint alleges that Upfront "maintained control over the Board by exercising its right to designate one Board member, and by influencing and forcing the appointment of purportedly "independent" directors that Upfront knew would do Upfront's bidding."  Complaint, at ¶ 229.  The appointment of a single Board member on a five-person Board, based on a negotiated contractual right, is not an exercise of control.

30.     Further, the Complaint does not allege that Upfront controlled an additional two members of the Board sufficient to control a majority board of the Board. Instead, the Complaint alleges that Upfront installed a "lackey" on the Board to "reconstitute the Board in [its] favor," referring to Ynon Kreiz ("Kreiz").  Complaint, at ¶ 58.  However, the

13

Complaint alleges no facts to support that Kreiz was somehow not independent; it only alleges that Kreiz had a pre-existing relationship with Upfront and Suster. Further, even if the Complaint had pleaded facts to support its allegation that Kreiz was not independent and he acted as Upfront's "lackey," Kreiz's alleged support on the Board could not constitute Upfront's actual control over the Board, as Kreiz and Suster, acting together, would still never have had control over the five-person Board.

31.     In an attempt to overcome this hurdle, the Complaint alleges that a third director, Terry Boyle, "compromise[d] the disinterestedness and independence of the Board." Complaint, at ¶ 229. There is no allegation that Boyle had any pre-existing relationship with Upfront or any of the Defendants, nor that he acted on the instruction of Upfront.

32.     Accordingly, the Complaint's conclusion that Upfront controlled the Board is insufficient. Upfront cannot be found to owe fiduciary duties as a "controller" of the Board based on the facts alleged.

### b.  Development of Playbook Not an Exercise of Control.

33.     The Complaint alleges that "developing the Playbook" was an act of actual control giving rise to fiduciary duties. Complaint, at ¶ 36. The Complaint describes the Playbook as a detailed, coordinated plan "to block the Board from considering other financing options and to force Davis and the company to consummate the A-2 Proposal." Complaint, at ¶ 36. On its face, the "development" of a plan cannot be considered an act of actual control. To the extent such a plan existed and Upfront attempted to implement it, it did not succeed. The Company did not, in fact, fail to consider other financing options, nor was the A-2 Proposal ever consummated. Accordingly, the Playbook does not constitute a factual allegation of actual control on the part of Upfront.

34.    More significantly, the Complaint itself concedes that Upfront and Breakwater did not succeed in implementing the Playbook:

> 95.    On or about November 9, 2017, Upfront and Breakwater informed Loot Crate that they would not provide the additional $1.5 million in bridge financing that had been previously offered unless Davis provided an irrevocable power of attorney over his common stock in Loot Crate.
>
> 95.    By this condition, Upfront and Breakwater placed Davis exactly where they wanted him in their scheme: Between a rock and a hard place. **If Davis agreed, Upfront and Breakwater would obtain even greater, unfettered control of Loot Crate.** If Davis refused, the lack of additional bridge financing would leave Loot Crate without sufficient working capital.
>
> 96.    **Davis did not consent to the additional demand.**

Complaint, at ¶¶ 94-96 (emphasis added).

### c.    Preventing Quorum Not an Exercise of Control.

35.    The Complaint additionally alleges that Upfront controlled Loot Crate by Suster's "refus[al] to attend meetings to preclude the existence of a quorum."  Complaint, at ¶¶ 231.  Attendance (or refusing to attend) board meetings was an act taken by Suster rather than by Upfront, and thus it does not constitute control on the part of *Upfront* over the Debtors.  Further, an *attempt* to exercise control by preventing a quorum does not constitute actual control sufficient to create fiduciary duties, as set forth, *supra*, ¶ 30.

36.    The Complaint does not adequately allege that the lack of quorum allowed Upfront to exercise control on the part of Upfront during the limited time a quorum was not achieved.  The Complaint deceptively *suggests* that Suster's absence resulted in the withdrawal of the "New BioWorld Proposal," but does not identify the date that this occurred.  Complaint, ¶ 149 ("Eventually, Upfront's and Breakwater's tactics achieved their goal.  Despite spending close to two months of time and effort to advance the financing transaction, BioWorld withdrew its proposals.").  This is <u>not</u> an allegation that the failure to obtain a quorum during that brief

interval resulted in any dispositive action or inaction.  The Committee also cannot actually make this allegation because as it well knows, the Debtors were able to obtain a quorum no later than December 22, 2017 and BioWorld did not withdraw their financing offer until January 22, 2018.  Further, Davis had a way out of the lack of quorum *that he used*:  he caused an additional director, Osman Khan, to be appointed.  Accordingly, no credible allegation can be made that actual control on the part of Upfront is alleged to have resulted from the lack of quorum.  Further, even if control is adequately alleged as a result of the failed quorum, any fiduciary duties on the part of Upfront would be limited to the time during which control was asserted, i.e., the narrow period during December 2017 in which a quorum was prevented.

### d.  Pressuring Counterparties Not an Exercise of Control.

37.     The Complaint alleges that Upfront "[t]o exercise more control . . . used its position and relationship in the industry to **attempt to** convince Atalaya and/or South River from completing its financing proposals, including by threatening litigation"  Complaint, at ¶ 232 (emphasis added).  There is no explanation as to how any pressure was an *act of control* on the part of Upfront *over Loot Crate*, and there was not allegation that the attempt actually succeeded or how such attempt could have or did cause any damage.  No control over Loot Crate is alleged.

38.     In short, the Complaint pleads no facts sufficient to adequately allege that Upfront actually controlled the Debtors.  In fact, the Complaint's allegations show that Davis was the only person with "actual control" over the Debtors, and that he, to the detriment of the Debtors, refused to take actions that lessened his control over the Company.  Accordingly, Count I must be dismissed as against Upfront as the Complaint does not allege facts establishing that Upfront exercised actual control over the Debtors and therefore it cannot be found to have owed fiduciary duties to the Debtors.

## ii. Defendant Upfront GP V, LLC Did Not Owe Debtors Fiduciary Duties at Any Time.

39. If Defendant Upfront did not have fiduciary duties to the Debtors, Count I must also be dismissed as to Upfront GP V, LLC, the general partner of Upfront whose only alleged connection to the Debtors is through Upfront. Thus, even if the Complaint is found to have sufficiently alleged fiduciary duties on the part of Upfront, it does not plead _any_ facts sufficient to establish actual control on the part of Upfront GP V, LLC over Loot Crate. Rather, the Complaint conclusorily alleges in a single statement that "[u]pon information and belief, Upfront GP V, LLC is the general partner of, and operates, Upfront." Complaint, at ¶ 13. This is insufficient to allege a fiduciary duty on the part of Upfront GP V, LLC to the Debtors. _Brinckerhoff v. Enbridge Energy Co._, No. 5526-VCN, 2011 Del. Ch. LEXIS 149, *24 (Del. Ch. Sept. 30, 2011); _cf Official Comm. v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)_, 590 B.R. 211, 272 (Bankr. D. Del. 2018) ("directors of a parent corporation do not owe fiduciary duties to subsidiary corporations").

40. Accordingly, Count I must be dismissed as against Upfront GP V, LLC as the Complaint does not allege facts establishing that Upfront GP V, LLC exercised actual control over the Debtors and therefore it cannot be found to have owed fiduciary duties to the Debtors.

## iii. Upfront Individual Defendants Only Owed Fiduciary Duties During Limited Periods of Time

41. The Complaint provides a list of the dates for which each Upfront Series A Director (Bettinelli, Suster, and Kibler) served as a director. For Bettinelli, it was between May 2016 and October 2017; for Suster, it was between October 2017 and January 2018; and for Kibler it was between July 2018 and July 2019. Complaint, at ¶ 227. Each individual Upfront Defendant served, and therefore owed fiduciary duties, _sequentially_. The Complaint does not set allege a basis for any individual Upfront Defendants owing fiduciary duties beyond the time he

or she served on the Board. Accordingly, to the extent any alleged breach occurred at a time when the individual Upfront Director was not on the Board, the Complaint must be dismissed as to that claim. To the extent any individual managed *Upfront's* affairs, that does not form the basis for a fiduciary duty owed to Loot Crate.

### b. Insufficient Allegations of Breaches of Fiduciary Duties.

42. A complaint fails to state a claim against an alleged fiduciary for breach of fiduciary duty when it fails to allege facts demonstrating that (1) the fiduciary took part in the challenged conduct and (2) failed to demonstrate the due care attendant to its particular office in doing so. *See Bridge Holding, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, LLC)*, 388 B.R. 548, 573 (Bankr. D. Del. 2008).

43. In a single count, the Complaint lists the following actions as breaches of the individual Upfront Defendants' alleged fiduciary duties:

(a) intentionally creating a cash crisis within Loot Crate for the purpose of reinforcing Upfront and Breakwater's effective control over Loot Crate (Bettinelli, Suster);

(b) preventing the Board from considering or seeking out alternative funding options, rendering the Board incapable of negotiating meaningfully in connection with the A-2, BioWorld, or Management Proposals (Bettinelli, Suster);

(c) aggressively and threateningly attempting to coerce the Board under duress into palpably unfavorable funding terms that would benefit Upfront and Breakwater at Loot Crate's expense (Bettinelli, Suster);

(d) intentionally sabotaging Loot Crate's efforts to comply under the Breakwater forbearance agreement in order to wrest Board control from Davis and other independent directors (Kibler);

(e) surreptitiously manipulating Loot Crate's financing efforts, including through: (i) creating and executing the Playbook, a secret and coordinated plan among ostensibly independent directors, interested directors, and dominant shareholders to force financing on Loot Crate that would solely benefit Upfront and Breakwater; and (ii) having secret meetings and communications with Loot Crate's former and existing management to sow seeds of disloyalty and apply additional pressure on Davis to act against his fiduciary duties (Bettinelli, Suster);

18

(f) failing to disclose dual loyalties (Bettinelli, Suster, Kibler); and

(g) using serial threats of litigation and other threats and antagonistic behavior directed at Davis, the Board, Loot Crate management, and other Loot Crate shareholders (Bettinelli, Suster).

Complaint, at ¶ 209. None of these states a claim for a breach of a fiduciary duty on the part of the identified individual Upfront Defendant(s).

44. Notably, the identified breaches relate only to the _individual_ Upfront Defendants. While the Committee devoted many paragraphs to alleging the *control* Upfront had over Loot Crate and concluding that Upfront owed fiduciary duties to Loot Crate, it did not allege that Upfront breached any fiduciary duty in paragraph 241. Accordingly, Count I must be dismissed as to Upfront.

### i. Alleged Breaches of Fiduciary Duties

### 1. Creation of Cash Crisis (Bettinelli, Suster).

45. The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli or Suster for "intentionally creating a cash crisis within Loot Crate." Complaint, at ¶ 241(a). In fact, the basis for such an allegation is entirely unclear from the Complaint. The Complaint does not allege any action on the part of either Bettinelli or Suster that explains when the cash crisis existed, how the cash crisis was created, and the role either played.[7] Mere conclusory allegations devoid of factual details to support an allegation are not to be accepted as true, and necessarily fail to meet the pleading requirement needed to survive a Rule 12(b)(6) motion to dismiss. *Jackson Nat'l Life Ins. Co. v. Kennedy*, Del. Ch., 741

---

[7] To the extent the Committee is referencing Upfront's refusal to provide an "additional $1.5 million in bridge financing that had previously been offered unless Davis provided an irrevocable power of attorney over his common stock in Loot Crate," this allegation does not state a claim for breach of fiduciary duty. Complaint, at ¶ 94. Upfront had every right to condition its funding on whatever conditions it wanted, or decline to provide financing entirely. *Odyssey P'rs, L.P. v. Fleming Cos., Inc.*, 735 A.2d 386, 411 (Del. Ch. 1999) (holding that controlling stockholder was under no fiduciary obligation to agree to a proposal that would have "required significant and disproportionate self-sacrifice").

A.2d 377, 386, 392 (1999) (citations omitted). The Complaint makes a conclusory allegation without factual details in support thereof. The Committee further fails to allege that the alleged cash crisis would have otherwise been avoided in the absence of any action or inaction by Bettinelli or Suster. The Complaint must be dismissed as to this claim.

## 2. Preclusion of Alternative Funding (Bettinelli, Suster).

46. The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli or Suster for "preventing the Board from considering or seeking out alternative funding options, rendering the Board incapable of negotiating meaningfully in connection with the A-2, BioWorld, or Management Proposals." Complaint, at ¶ 241(b). The A-2, BioWorld and Management Proposals were considered during Suster's tenure as the Series A Director, well after he replaced Bettinelli in that role. Accordingly, Bettinelli did not owe fiduciary duties during the applicable time period, and the Complaint must be dismissed as Bettinelli in connection with this claim.

47. Further, as to Suster, the Complaint pleads directly contradictory facts, stating that "[i]n late November and early December 2017, Loot Crate continued to seek additional debt financing, entering into further negotiations with BioWorld that culminated in a new proposal for debt financing from BioWorld." Complaint, at ¶ 119. Further, the Complaint alleges that "[o]n January 4, 2018, Suster resigned from the Board," and the Board was without any Series A Director between January 4, 2018 and July 24, 2018, during which time Loot Crate was absolutely free to seek any funding it wished, yet no alternative financing was consummated. *See id*. at ¶ 150, 180.

48. The Complaint does not allege that the Series A Director cast a determinative vote to prohibit consideration of alternative funding, and Upfront is not alleged to have actually exercised its contractual consent right regarding additional share issuances.

Further, even if it did refuse consent, as set forth above, Upfront was entitled to do so and such action cannot violate a breach of fiduciary duty. *See*, *supra*, ¶¶ 35-37 (citing *Thermopylae Capital Partners, L.P. v. Simbol, Inc.*, 2016 Del. Ch. LEXIS 15 and *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co*., 2006 Del. Ch. LEXIS 160). The Committee also does not allege that the Debtors would have ultimately obtained alternative financing, and such alternative financing would have allowed Loot Crate to survive. There are simply no facts alleged that give rise to a claim for breach of fiduciary duty in preventing the Debtors from considering other financing, and the facts alleged state other financing was considered. The Complaint must be dismissed as to this claim.

### 3. Coercion of Board into Unfavorable Funding Terms (Bettinelli, Suster).

49. The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli or Suster for "attempting to coerce the Board under duress into palpably unfavorable funding terms that would benefit Upfront and Breakwater at Loot Crate's expense." Complaint, at ¶ 241(c). Once again, the A-2 Term Sheet proposal was made and considered during Suster's tenure as the Series A Director, well after he replaced Bettinelli in that role. Accordingly, Bettinelli did not owe fiduciary duties during the applicable time period, and the Complaint must be dismissed as Bettinelli in connection with this claim.

50. Notably, in its allegation, the Complaint merely states that such coercion was "attempted." Without the allegation that the Board agreed to and consummated such unfavorable terms, there can be no damage therefrom. Further, the "palpably unfavorable terms" are alleged to have been that the A-2 Proposal included anti-dilution preferences with respect to Upfront and Breakwater, which "would create a materially negative economic impact on the majority of Loot Crate's other shareholders." Complaint, at ¶ 67. These allegations address the

impact on other shareholders rather than the Debtors, and Upfront was not required to agree to a proposal it did not find to be in its interests. *Odyssey P'rs, L.P. v. Fleming Cos., Inc.*, 735 A.2d 386, 411 (Del. Ch. 1999) (holding that controlling stockholder was under no fiduciary obligation to agree to a proposal that would have "required significant and disproportionate self-sacrifice"). As the proposed funding was equity funding, it was unquestionably better for creditors (to whom fiduciary duties at that point likely flowed) rather than the debt financing Davis urged.

51.     Finally, the Board's November 3, 2017 approval of the A-2 Term Sheet, including these allegedly unfavorable terms, was *unanimously* approved by the entire Board, including Davis.  This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

### 4. Sabotaging Compliance with Breakwater Forbearance Agreement (Kibler).

52.     The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Kibler in "intentionally sabotaging Loot Crate's efforts to comply under the Breakwater forbearance agreement in order to wrest Board control from Davis and other independent directors."  Complaint, at ¶ 241(d).  The Complaint states that:

> In late May 2018, Atalaya's principal, Matt Spiro ("Spiro"), emailed his contact at Upfront, Kobie Fuller, to request a meeting with Suster in connection with Atalaya's due diligence efforts for its financing commitment. When Kibler received word of this inquiry, she immediately sought to protect Upfront's interests over Loot Crate's interests. On May 22, 2018, Kibler wrote Fuller, "either they [Atalaya] are proposing something that Breakwater won't approve because it requires them to roll over a portion of their debt or it's a structure that would likely not end well for us."

Complaint, at ¶ 172.  As the Complaint acknowledges, Kibler did not become a director until July 2018.  Complaint, at ¶ 227.  Accordingly, Kibler did not owe any fiduciary duties in May 2018.  This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

### 5. Manipulating Financing Efforts (Bettinelli, Suster).

53.      The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli or Suster for "surreptitiously manipulating Loot Crate's financing efforts, including through: (i) creating and executing the Playbook, a secret and coordinated plan among ostensibly independent directors, interested directors, and dominant shareholders to force financing on Loot Crate that would solely benefit Upfront and Breakwater; and (ii) having secret meetings and communications with Loot Crate's former and existing management to sow seeds of disloyalty and apply additional pressure on Davis to act against his fiduciary duties." Complaint, at ¶ 241(e).

### a. The Playbook.

54.      The Complaint describes the Playbook as a detailed, coordinated plan "to block the Board from considering other financing options and to force Davis and the company to consummate the A-2 Proposal."   Complaint, at ¶ 98.   The Playbook is described as a plan developed prior to the "November 15 meeting," during Suster's tenure as the Series A Director and well after he replaced Bettinelli in that role.   Accordingly, Bettinelli did not owe fiduciary duties during the applicable time period, and the Complaint must be dismissed as Bettinelli in connection with this claim.

55.      Further, to the extent such a plan existed, the Complaint concedes it did not succeed. *See*, *supra*, ¶¶ 36-37; Complaint, at ¶¶ 94-96. Without the allegation that the Board agreed to and consummated such unfavorable terms, there can be no damage therefrom.  Further, the "financing . . . that would solely benefit Upfront" is the A-2 Proposal that is not alleged to be harmful to Loot Crate.  Instead, the A-2 Proposal included anti-dilution preferences with respect to Upfront and Breakwater, which "would create a materially negative economic impact on the majority of Loot Crate's other shareholders."  Complaint, at ¶ 67.  As the proposed funding was

equity funding, it was unquestionably better for creditors (to whom fiduciary duties at that point likely flowed) rather than the debt financing Davis urged. Finally, the Board's November 3, 2017 approval of the A-2 Term Sheet, including these allegedly unfavorable terms, was *unanimously* approved by the entire Board, including Davis. This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

### b. Secret Meetings.

56.     The Complaint must provide more specificity on the alleged "secret meetings and communications" which are claimed to be a violation of Bettinelli's and Suster's fiduciary duties. Bettinelli and Suster cannot respond to the allegations without additional details. However, none of the meetings or communications alleged in the Complaint violated their fiduciary duties *to the Company*. For example, the Complaint alleges that at such "secret meetings" Upfront "devised schemes to replace current management (without informing management)." Complaint, at ¶ 233. The Series A Director owed fiduciary duties *to the Company*, not Davis. Further, there is no allegation of damages resulting from any secret meetings. This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

### ii. Failing to Disclose Dual Loyalties (Bettinelli, Suster, Kibler).

57.     The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli, Suster, or Kibler for "failing to disclose dual loyalties." Complaint, at ¶ 241(f). The Complaint does not specify the "dual loyalty" at issue, but to the extent it is the Series A Director's role at Upfront, there can be no doubt the Debtors were aware of the positions of the Bettinelli, Suster and Kibler within Upfront. This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

### iii. Antagonistic Behavior (Bettinelli, Suster).

58.     The Complaint does not plead any facts sufficient to support a breach of fiduciary duty on the part of Bettinelli or Suster for "using serial threats of litigation and other threats and antagonistic behavior directed at David, the Board, Loot Crate management, and other Loot Crate shareholders."  Complaint, at ¶ 241(g).  No party can be prohibited from taking acts or stating its intent to preserve its legal rights, nor do such actions constitute a breach of fiduciary duty.   Further, there is no allegation that actual damages resulted from such antagonistic behavior.  This allegation does not support a claim for breach of fiduciary duty, and the Complaint must be dismissed as to this claim.

59.     The Complaint provides a laundry list of vague and unsupported allegations in an attempt to cast a miasma over the Upfront Defendants' conduct.  However, none of the Committee's concrete allegations state a claim for a breach of fiduciary duty.

### C.     Count II Must Be Dismissed as Plausible Claims for Aiding and Abetting Breach of Fiduciary Duty Have Not Been Alleged.

60.     The elements of a claim for aiding and abetting breach of fiduciary duty are: (1) the party must know that a fiduciary relationship existed between a third person and the plaintiff bringing suit; (2) the third person must have breached a fiduciary duty to the plaintiff; (3) "knowing participation" of the party in the fiduciary's breach of duty; and (4) actual damages as a result of the breach.  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

### a.     Count II Must Be Dismissed Against Upfront Entity Defendants

61.     Although Count II is styled as against "All Defendants," only Bettinelli, Suster and Kibler are alleged to have "individually or through Upfront knowingly and intentionally worked in concert with Breakwater and its representatives to assist or encourage Breakwater, Mansour, Amdani, Beckman, Geant, and Kaczorowski to breach their fiduciary

duties to Loot Crate in the ways enumerated in Count I above."  Complaint, at ¶ 251.  Further,

only Bettinelli, Suster, and Kibler are alleged to have "knowingly and intentionally worked in

concert with one another when one of them was on the Board to breach their fiduciary duties to

Loot Crate."  *Id*. at 252.  Accordingly, Count II must be dismissed against the Upfront entity

Defendants.

### b.  First Element Not Satisfied (Knowledge of Fiduciary Relationship)

62.    The Complaint does not allege that the Upfront Defendants knew a

fiduciary relationship existed between any of the Breakwater parties and the Debtors, and

certainly does not and cannot allege that the Upfront Defendants knew a fiduciary relationship

existed outside of the limited period of time that Mansour, Amdani, Beckman, Geant and

Kaczorowski were on the Board (July 2018-August 2018).  Accordingly, Count II must be

dismissed as to aiding and abetting any of the Breakwater Defendants.

### c.  Second Element Not Satisfied (Breach of Fiduciary Duty)

63.    To the extent Count I is dismissed, there can be no aiding and abetting any

breach of fiduciary duty that is dismissed and Count II must be dismissed as to those dismissed

claims.

64.    For the reasons the Complaint does not state a claim for breach of

fiduciary duty as to the Upfront individual Defendants, set forth above in paragraphs 47 to 60,

the Complaint also does not state a claim for breach of fiduciary duty by the Breakwater

individual Defendants.  (And, as with the Upfront Defendants, the Complaint only alleges that

Breakwater controlled the Debtors, it does not list Breakwater as a party who breached a

fiduciary duty in paragraph 241).  The limited allegation not addressed above is the Complaint's

claim that Mansour, Amdani, Beckman, Geant, and Kaczorowski breached their fiduciary duties

by "intentionally sabotaging Loot Crate's efforts to comply under the Breakwater forbearance agreement in order to wrest Board control from Davis and other independent directors." Complaint, at ¶ 241(d). There is no breach of fiduciary duty alleged in the Complaint because the Breakwater individual Defendants only became fiduciaries ***after*** Loot Crate failed to comply with the May 2018 Forbearance Agreement. Accordingly, there is no breach of fiduciary duty that any of the Upfront individual Defendants could have aided and abetted. Accordingly, Count II must be dismissed as to aiding and abetting any of the Breakwater Defendants.

### d. Third Element Not Satisfied (Knowing Participation)

65. With regard to the third element – "knowing participation" – conclusory allegations such as "[aiding and abetting defendant] had knowledge of the [fiduciary d]efendants' fiduciary duties and knowingly and substantially participated and assisted in the [fiduciary d]efendants' breaches of fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties" are insufficient as a matter of law. *In re Santa Fe Pacific Corp. S'holder Litig*., 669 A.2d 59, 72 (Del. 1995).

66. Count II contains precisely the sort of conclusory allegation that failed to state an aiding and abetting a breach of fiduciary duty claim in *In re Sante Fe*. Accordingly, Count II fails to satisfy a necessary element and must be dismissed.

### e. Fourth Element Not Satisfied (Actual Damages)

67. Although damages is not a technical element of a breach of fiduciary duty claim, it is an element of aiding and abetting. The Complaint fails to allege to any cognizable damages theory. Accordingly, the Count II must be dismissed.

### D. Count III Must Be Dismissed as Plausible Claims for Breach of Implied Covenant of Good Faith and Fair Dealing Have Not Been Alleged.

68. Under Delaware law:

> [t]he implied covenant of good faith and fair dealing inheres in every contract governed by Delaware law and 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'

*Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 145–46 (Del. Ch. 2009) (internal citation omitted). Under California law, the covenant of good faith and fair dealing may be used to aid in the construction of a contradictory and ambiguous contract. *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983).

69. The implied covenant, however, "does not apply when 'the subject at issue is expressly covered by the contract.'" *Airborne* at 146; *Racine & Laramie, Ltd. v. California Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031, 14 Cal. Rptr. 335, 338 (1992); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690, 254 Cal. Rptr. 211 (1988). Thus, "[t]he doctrine… operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer." *Airborne*. To elaborate:

> [t]he test for the implied covenant depends on whether it is 'clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter.'

*Id. See also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442–43 (Del. 2005) (deciphering an implied term should be "'rare and fact-intensive'") (internal citation omitted). Under Delaware or California law a court will look closely at the overall intent of the parties as specifically set forth in the contract to determine whether an action does or does not violate the covenant.

70. Here, however, the very acts the Committee asserts violate the implied covenant of good faith and fair dealing were specifically bargained for. The Committee states

that Upfront violated the implied covenant by "threatening coercing [sic] Loot Crate to accept more onerous financing terms than needed." Complaint, at ¶ 258.[8]

71.     Upfront negotiated for and had every right to demand that its equity was not diluted (as allowed under the Private Equity Agreement), and similarly insisted on a no-shop provision in the A-2 Term Sheet (as the Board, including Davis, voted to approve). Accordingly, Upfront's actions were taken in accordance with an explicit term of the applicable contracts rather than an implied term. Finally, there are no damages alleged as a result of Upfront's "coercion" as the financing proposed by Upfront was not consummated. Accordingly, the Complaint does not state a claim for breach of the implied covenant of good faith and fair dealing. Count III must be dismissed.

**E.     Count IV Must Be Dismissed as Plausible Claims for Civil Conspiracy Have Not Been Alleged.**

72.     For the same reasons that the Count II must be dismissed as plausible claims for aiding and abetting breach of fiduciary duty have not been alleged, Count IV must similarly be dismissed. The elements of an action for civil conspiracy are: (1) formation and operation of the conspiracy; (2) an wrongful act done in furtherance of the common design; and (3) damage resulting to plaintiff. *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44, 260 Cal. Rptr. 183, 775 P.2d 508 (1989). The wrongful acts alleged are breaches of fiduciary duty, all of which must be dismissed for the reasons stated above in paragraphs 47 to 60. Accordingly, there is no claim stated for civil conspiracy to breach fiduciary duties.

73.     Although damages is not a technical element of a breach of fiduciary duty

---

[8] The Committee also asserts that Upfront and Breakwater "and intentionally sabotaging Loot Crate's efforts to comply under the May 2018 Forbearance Agreement in order to obtain further control from Davis and other Board members"; however, as Upfront was not a party to the May 2018 Forbearance Agreement, it had no implied covenant of good faith with respect thereto.

claim, it is an element of a claim for civil conspiracy. The Complaint fails to allege to cognizable damages theory.  Accordingly, the Count IV must be dismissed.

**F.**       **Count IX Must Be Dismissed.**

74.       Pursuant to Bankruptcy Code Section 502(a), a proof of claim is deemed allowed unless a party in interest objects to it. As Bankruptcy Rule 3001(f) states, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  Assuming that the "averments in [the] filed claims meet the standard of sufficiency, it is 'prima facie' valid" the burden then shifts to the objector to produce evidence sufficient to negate prima facie validity. *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). "Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim." *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

75.       With respect to the validity of Upfront's proof of claim, the Complaint merely states that "the Defendants' Claims do not represent an actual, authorized liability of any of the Debtors."  Complaint, ¶ 295.a.  This is not sufficient to overcome the prima facie validity of Upfront's proof of claim.  Accordingly, Claim IX should be dismissed.

**G.**       **The Complaint's Prayer for Compensatory Damages Must Be Stricken.**

76.       The Complaint has not alleged any cognizable damages theory with respect to any of the Counts against the Upfront Defendants.  Although damages is not a technical element of a breach of fiduciary duty claim, the Committee is not entitled to seek anything other than nominal damages based on the allegations pleaded.  Accordingly, the Court should strike the Committee's prayer for $100 million in compensatory damages pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## CONCLUSION

77.      For all of the foregoing reasons, Upfront submits that Counts I, II, III, IV, and IX be dismissed as to the Upfront Defendants.

Dated:  March 5, 2021                    PACHULSKI STANG ZIEHL & JONES LLP

                                          */s/ Colin R. Robinson*
                                         Dean A. Ziehl (NY Bar No. 4133971)
                                         James K.T. Hunter (CA Bar No. 73369)
                                         Colin R. Robinson (DE Bar No. 5524)
                                         919 North Market Street, 17th Floor
                                         P.O. Box. 8705
                                         Wilmington, Delaware 19899-8705 (Courier 19801)
                                         Telephone:     (302) 652-4100
                                         Facsimile:     (302) 652-4400
                                         E-mail:        dziehl@pszjlaw.com
                                                        jhunter@pszjlaw.com
                                                        crobinson@pszjlaw.com


                                         *Counsel to the Upfront Defendants*