Exhibit D

EXECUTION VERSION

Loot Crate, Inc.
3401 Pasadena Avenue
Los Angeles, CA 90031

June 1, 2016

Breakwater Credit Opportunities Fund, L.P.
1999 Avenue of the Stars, Suite 3430
Los Angeles, CA 90067
Attn:  Saif Mansour

> Re:    Investor Rights.

Dear Saif:

Loot Crate, Inc., a Delaware corporation (the "**Company**"), and Breakwater Credit Opportunities Fund, L.P. ("**Investor**") are entering into this letter agreement (this "**Agreement**") in connection with the purchase by Investor and/or one or more of its Affiliates (as defined below) from the Company of shares of the Series A Preferred Stock, par value $0.001 per share, of the Company ("**Series A Preferred Stock**") and the extension by Investor of a credit facility to the Company pursuant to the Loan and Security Agreement, dated as of the date hereof, between the Company and Investor (the "**Loan Agreement**").  In connection therewith, the parties hereby agree as follows:

1.    Board Observer Right.  The Company hereby grants to Investor the right to have a single representative of Investor attend all meetings of the Company's Board of Directors (the "**Board**") and the committees of the Board in a nonvoting observer capacity and, in this respect, shall give such representative copies of all notices, minutes, consents, and other materials that it provides to its directors at the same time and in the same manner as provided to such directors; provided, however, that such representative shall agree to hold in confidence and trust and to act in a fiduciary manner with respect to all information so provided; and provided further, that the Company reserves the right to withhold any information and to exclude such representative from any meeting or portion thereof if it determines in good faith, upon advice from counsel, that access to such information or attendance at such meeting c ould adversely affect the attorney-client privilege between the Company and its counsel or result in disclosure of trade secrets. Investor's rights under this Section 1 shall not be exercisable at any time that Investor is exercising its board observation rights under Section 6.10 of the Loan Agreement.

2.    Term.  The right set forth in Section 1 is not transferable (other than to Affiliates of Investor) and shall terminate upon the earliest of (such date, the "**Rights Termination Date**"): (a) the date that Investor and its Affiliates collectively own less twenty-five percent (25%) of the Series A Preferred Stock that they purchased on or about the date of this Agreement, (b)

immediately before the consummation of a Qualified IPO, or (c) upon a Liquidation Event, as each such term is defined in the Company's Amended and Restated Certificate of Incorporation.

3.    <u>Tag-Along Right</u>.    If any of the undersigned holders of capital stock of the Company or any of their respective Affiliates (each, a "**Key Stockholder**") shall propose to transfer (excluding any transfers to Affiliates or for bona fide estate planning purposes and Special Exempt Transfers, as defined in the Right of First Refusal and Co-Sale Agreement, dated as of May 10, 2016, by and among the Company and the Company stockholders named therein (the "**ROFR Agreement**")) any shares of capital stock of the Company held by such Key Stockholder (in each case, the "**Offered Shares**") to a third party (the "**Offeree**"), then Investor shall have the right to require that the Key Stockholder cause the Offeree (for this purpose Offeree shall include the Company and the Major Investors, as defined in the ROFR Agreement, to the extent that they exercise their co-sale rights with respect to the Offered Shares pursuant to the ROFR Agreement) to purchase from Investor up to that number of shares equal to the product obtained by multiplying (i) the total number of Offered Shares proposed to be transferred by the Key Stockholder by (ii) a fraction, the numerator of which is the total number of shares of capital stock of the Company held by the Investor immediately before the proposed transfer (including the shares subject to the Warrant held by Investor and the shares issued pursuant to exercise thereof (collectively the "**Warrant Shares**")) (the "**Number of Investor Shares**"), and the denominator of which is the sum of (x) the Number of Investor Shares, (y) the number of shares of capital stock held by the Key Stockholder and (z) the aggregate number of shares of capital stock held by all Major Investors exercising their co-sale rights with respect to the Offered Shares pursuant to the ROFR Agreement.  Such Investor Shares to be purchased by the Offeree from Investor shall be purchased at the same price and on the same terms and conditions as offered to the Key Stockholder (such right hereinafter called the "**Tag-Along Right**"); provided that if the Investor or its Affiliates wishes to sell Series A Preferred Stock and the Key Stockholder proposes to sell common stock of the Company, the price shall be appropriately adjusted based on the conversion ratio of the Series A Preferred Stock into common stock.  The Investor shall receive notice of a transfer subject to this Section 3 no later than fifteen (15) days prior to the consummation of such transaction.  The Investor must deliver a written notice with respect to its exercise of its Tag-Along Right under this Section 3 within ten (10) days after delivery of the notice referenced in the immediately preceding sentence.  Any transfer by Investor pursuant to this Section 3 shall be on the same terms and conditions (including, time of payment and form of consideration) as to be paid to the Key Stockholder, and the Investor and its Affiliates must agree to the same conditions to such transfer as the Key Stockholder agrees, including representations, warranties, covenants, indemnities and other agreements; provided, however, (i) neither Investor nor its Affiliates shall be subject to any non-competition or similar agreements or covenants that would bind the Investor; and (ii) the liability for indemnification, if any, of Investor or its Affiliates in such transfer and for the inaccuracy of any representations and warranties made by the Company or its stockholders in connection with such transfer, is several and not joint with any other stockholder, is pro rata in proportion to, and does not exceed, the amount of consideration paid to Investor in connection with such transfer.

4.    <u>Preemptive Rights</u>.    The Company acknowledges and agrees that the Investor shall constitute a Major Investor for purposes of Section 3 of the IRA, and in connection with the issuance of any Equity Securities (as defined in the IRA), the Company shall reserve sufficient Equity Securities to permit the Investor to purchase its pro rata share of the Equity Securities

based on the Outstanding Common Equivalents (as defined in the IRA, but excluding the Warrant Shares) held by the Investor.  The rights set forth in this Section 4 shall terminate upon the applicable Rights Termination Date.  Notwithstanding anything to the contrary herein, the Company acknowledges and agrees that the Investor and its Affiliates may purchase up to an aggregate of $1,500,000 of additional shares of Series A Preferred Stock within thirty (30) days of the date hereof, subject to such terms and conditions mutually agreed by the Company and the Investor.

5.    <u>Loan Documents</u>.  Nothing herein is intended to affect the respective rights and remedies that Investor shall have, as lender, which rights are governed by the Loan Agreement. Notwithstanding any provision herein to the contrary, nothing herein shall be construed to limit, waive, amend or alter the terms and provisions of the Loan Agreement or any rights or remedies available to the lenders thereunder and their Affiliates as creditors of the Company.

6.    <u>Miscellaneous</u>.

(a)  This Agreement shall be governed by the General Corporation Law of the State of Delaware as to matters within the scope thereof, and as to matters of contract law, by internal laws of the State of California applicable to contracts and without regard to any conflict of law principles.

(b)  This Agreement may be executed in counterparts, each of which when so executed shall be deemed an original, but both of which when taken together shall constitute one and the same instrument.

(c)  For purposes of this Agreement, the term "Affiliate" means, with respect to any specified person or entity, any other person or entity who, directly or indirectly, controls, is controlled by, or is under common control with such person or entity, including without limitation any general partner, managing member, officer or director of such person or entity or any investment fund now or hereafter existing that is controlled by one or more general partners or managing members of, or shares the same management company with, such person or entity.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

LOOT CRATE, INC.

By
Name: Christopher Davis
Title: Chief Executive Officer


KEY STOCKHOLDERS

By
Name:  Christopher Davis

By
Name: Matthew Arevalo

INVESTOR

BREAKWATER CREDIT OPPORTUNITIES
FUND, L.P.

By: _____
Name: SAIP MANSOUR
Title: MANAGING PARTNER