Exhibit E

| | |
|---|---|
| From: | Schernecke, Matthew Edward |
| Sent: | Fri 11/17/2017 8:12 PM (GMT-05:00) |
| To: | Christopher Davis; Mark Suster; Ynon Kreiz; Terry Boyle; Ryan Hibbard |
| Cc: | Donald Lee; Nick Hobson; Linda Menzel; Michael Carney; Schoulder, Andrew; John Pernick; Gersh, Bruce - Executive Administration <Bruce.Gersh@timeinc.com>; Saif Mansour; Aamir Amdani; Eisenbiegler, Rick; Grant, Kevin M.; Meyer, Melissa |
| Bcc: | |
| Subject: | Loot Crate - Notice of Default |
| Attachments: | Loot Crate- Notice of Default 11.17.17.pdf |

All:

Please find attached a Notice of Default circulated to you at the request of Breakwater.

Best regards,

**Matthew Edward Schernecke**
**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6135 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
matthew.schernecke@morganlewis.com | www.morganlewis.com
Assistant: Cynthia DeSteno | +1.212.309.6919 | cdesteno@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

**BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**
c/o Breakwater Investment Management, LLC
1999 Avenue of the Stars
Suite 3430
Los Angeles, CA 90067

November 17, 2017

**VIA E-MAIL AND**
**FEDERAL EXPRESS**

Loot Crate, Inc.
3401 Pasadena Avenue
Los Angeles, CA 90031
Attention: Christopher Davis
Email: Chris@lootcrate.com

    Re:    **Notice of Continuing Defaults and Events of Default; Certain Consequences of Continuing Defaults and Events of Default; Reservation of Rights**

Gentlemen:

We refer to the Loan and Security Agreement, dated as of June 1, 2016 (as amended and in effect on the date hereof, the "**Loan Agreement**"), **BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**, a Delaware limited partnership, as a Lender (as defined herein) and as agent for the Lenders (in such capacity, "**Agent**"), **LOOT CRATE, INC.**, a Delaware corporation ("**Borrower**"), and the lenders party thereto (the "**Lenders**"). Unless otherwise defined herein, all capitalized terms used herein and defined in the Loan Agreement are used herein as therein defined.

The principal purposes of this letter are to (a) give you notice of (i) certain Defaults and Events of Default under the Credit Agreement and (ii) certain consequences of such Defaults and Events of Default, and (b) reserve all rights and remedies of the Agent and the Lenders under the Loan Agreement and all of the other Loan Documents.

    1.    **Notice of Defaults and Events of Default**. The following Defaults and/or Events of Default are continuing under the Loan Agreement:

    (a)    <u>December 31, 2016 Financial Covenant Default.</u> Based on information provided by the Borrower to the Agent, for the period ended December 31, 2016, the Borrower has breached the Minimum Subscribers covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending December 31, 2016. Such

failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(b)      June 30, 2017 Financial Covenant Default. Based on information provided by the Borrower to the Agent, for the period ended June 30, 2017, the Borrower has breached the Minimum Subscribers covenant under Section 7.12(b) of the Loan Agreement for the fiscal quarter ending June 30, 2017. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(c)      June 30, 2017 Financial Covenant Default. Based on information provided by the Borrower to the Agent, for the period ended June 30, 2017, the Borrower has breached the Minimum Revenue covenant under Section 7.12(b) of the Loan Agreement for the fiscal quarter ending June 30, 2017. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(d)      Reporting of Monthly Financial Statements Default. The Borrower has breached the covenant in Section 6.2(b) requiring that the Borrower provide monthly financial statements within 45 days after the end of each month. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(e)      Notice of Event of Default. The Borrower has breached the covenant in Section 6.2(e) requiring that the Borrower provide notice to the Agent upon its becoming aware of various Events of Default together with a detailed statement setting forth the steps being taken by the Loan Parties to cure the same. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(f)      Collateral Events of Default. Based on information provided by the Borrower to the Agent on March 7, 2017, the Borrower has (i) breached Section 6.13 related to deposit account number 855657016 of the Borrower and deposit account number 41390376 of Loot Crate UK, Ltd. in relation to which Account Control Agreements were not executed prior to or at the time of opening such deposit accounts (the "**Deposit Account Default**"); and (ii) breached Section 6.7(b) by failing to notify the Agent of new registered Trademarks and applications for Trademarks and provide intellectual property security agreements and other documents and take such other actions as the Agent may request to perfect and maintain a first priority perfected security interest in such Trademarks and applications for Trademarks (the "**Trademarks Default**"). The Deposit Account Default is a continuing Event of Default under Section 8.3(a) of the Loan Agreement and the Trademarks Default is a continuing Event of Default under Section 8.3(b) of the Loan Agreement.

(g)      Reporting of Annual Financial Statements Default. The Borrower has breached the covenant in Section 6.2(a) requiring that the Borrower provide consolidated audited financial statements within 180 days after the end of the fiscal year ending December 31, 2016. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(h)  September 30, 2017 Financial Covenant Default. Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Cash covenant under Section 7.12(a) of the Loan Agreement for the fiscal quarter ending September 30, 2017. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(i)  September 30, 2017 Financial Covenant Default. Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Subscribers covenant under Section 7.12(b) of the Loan Agreement for the fiscal quarter ending September 30, 2017. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(j)  September 30, 2017 Financial Covenant Default. Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Revenue covenant under Section 7.12(b) of the Loan Agreement for the fiscal quarter ending September 30, 2017. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(k)  Disposition of Property. Borrower breached the covenant in Section 7.1 requiring that Borrower receive the Agent's consent before disposing of Property with a value in excess of $250,000. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(l)  Lease. Borrower breached the covenant in Section 7.2 requiring that Borrower provide the Agent with advance written notice before entering into a lease on January 16, 2017 for a leased location located in the United Kingdom (which lease expires on January 31, 2018). Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(m)  Key Person. Borrower breached the covenant in Section 7.2 when Eric Chan, a Key Person and the former Chief Financial Officer, resigned and was not replaced within 90 days of such resignation. Such failure to comply is a continuing Event of Default under Section 8.3(a) of the Loan Agreement.

(n)  Other Defaults or Events of Default. Other Defaults or Events of Default may be continuing under the Credit Agreement.

The Events of Default described in paragraphs (a), (b), (c), (d), (e), (f), (g), (h), (i) and (k) are hereinafter referred to as the "**Continuing Defaults**".

2. **Certain Consequences of the Continuing Defaults.** The continuation of the Continuing Defaults has the following consequences, among others:

(a)  The Agent, on behalf of itself and the Lenders, may declare all Obligations immediately due and payable.

(b) As provided in Section 2.5(c) of the Loan Agreement, as of December 31, 2016, all Obligations shall bear interest at the default interest rate provided in such Section 2.5(c).

(c) As provided in the definition of "Permitted Acquisition" in Section 1.1 of the Loan Agreement, the Borrower may not consummate any Permitted Acquisition.

(d) As provided in Section 6.5 of the Loan Agreement, the proceeds payable under any insurance policy shall, at the Agent's option, be payable to the Agent on behalf of itself and the Lenders on account of the Obligations.

(e) As provided in Section 6.8 of the Loan Agreement, the Agent or any Lender, or its respective agents, may, without notice and at any time, inspect the Collateral and audit and copy Borrower's Books.

(f) As provided in Section 6.13 of the Loan Agreement (i) the Borrower and the other Loan Parties may not open new deposit accounts, securities accounts or Commodity Accounts and (ii) the Agent may issue a Notice of Exclusive Control in respect of any deposit account, securities account or Commodities Account.

(f) As provided in Section 9.1 of the Loan Agreement, the Agent may settle or adjust disputes and claims directly with Account Debtors for amounts on terms and in any order that Agent or any Lender considers advisable, notify any Person owing Borrower money of Agent's security interest in such funds, and verify the amount of such account;

(g) As provided in Section 9.4 of the Loan Agreement, the Agent may apply any funds in its possession, whether from Loan Party account balances, payments, proceeds realized as the result of any collection of Accounts or other disposition of the Collateral, or otherwise, to the Obligations in such order as the Agent shall determine in its sole discretion or as directed by the Required Lenders in their sole discretion.

(h) As provided in Section 12.1 of the Loan Agreement, assignments of any Lender's obligations, rights and benefits under the Loan Agreement and the other Loan Documents shall not require written notice to the Borrower.

(i) Certain other rights, privileges and benefits which are available to the Loan Parties under the Loan Agreement or the other Loan Documents only when a Default and/or an Event of Default is not continuing will no longer be available to the Loan Parties.

(j) The Agent and the Lenders have available to them, and are entitled to exercise, in each case, all of the rights and remedies accorded under the Loan Agreement and the other Loan Documents with respect to the Continuing Defaults and any other continuing Default or Event of Default.

3. **Reservation of Rights.** The Agent and the Lenders have not waived (a) the Continuing Defaults described above or any other Defaults or Events of Default that may be continuing under the Loan Agreement or (b) any of their respective rights or remedies arising from any Continuing Defaults or such other Defaults or Events of Default or otherwise available under the Loan Documents or at law. The Agent and the Lenders expressly reserve all such rights and remedies.

*[Signature page follows]*

Sincerely yours,

**BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**

By: **BREAKWATER INVESTMENT MANAGEMENT, LLC**, its general partner

By: _____
Name: Saif Mansour
Title: Managing Partner

cc: Members of the Board of Directors;
Frederick F. Eisenbiegler, Esq., Morgan, Lewis & Bockius LLP

UCC_019701