Exhibit F

| | |
|---|---|
| From: | Meyer, Melissa |
| Sent: | Mon 11/20/2017 7:53 PM (GMT-05:00) |
| To: | Christopher Davis; Mark Suster; Ynon Kreiz; Terry Boyle; Ryan Hibbard |
| Cc: | Donald Lee; Nick Hobson; Linda Menzel; Michael Carney; Schoulder, Andrew; John Pernick; Gersh, Bruce - Executive Administration <Bruce.Gersh@timeinc.com>; Saif Mansour; Aamir Amdani; Eisenbiegler, Rick; Grant, Kevin M.; Dailey, Renee M.; Schernecke, Matthew Edward |
| Bcc: | |
| Subject: | RE: Loot Crate - Notice of Default |
| Attachments: | Breakwater-LootCrate- Notice of Default.pdf |

All:

Please find attached a Notice of Default circulated to you at the request of Breakwater.

Best regards,


**Melissa M. Meyer**
Morgan, Lewis & Bockius LLP
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6891 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
melissa.meyer@morganlewis.com | www.morganlewis.com
Assistant: Cynthia DeSteno | +1.212.309.6919 | cynthia.desteno@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**
c/o Breakwater Investment Management, LLC
1999 Avenue of the Stars
Suite 3430
Los Angeles, CA 90067

November 20, 2017

**VIA E-MAIL AND**
**FEDERAL EXPRESS**

Loot Crate, Inc.
3401 Pasadena Avenue
Los Angeles, CA 90031
Attention: Christopher Davis
Email: Chris@lootcrate.com

Re: **Notice of Continuing Defaults and Events of Default; Certain Consequences of Continuing Defaults and Events of Default; Reservation of Rights; Intention of Agent to Exercise Remedies.**

Gentlemen:

We refer to the Loan and Security Agreement, dated as of June 1, 2016 (as amended and in effect on the date hereof, the "**Loan Agreement**"), by and among **BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**, a Delaware limited partnership, as a Lender (as defined herein) and as agent for the Lenders (in such capacity, "**Agent**"), **LOOT CRATE, INC.**, a Delaware corporation ("**Borrower**"), and the lenders party thereto (the "**Lenders**"). Unless otherwise defined herein, all capitalized terms used herein and defined in the Loan Agreement are used herein as therein defined.

The principal purposes of this letter are to (a) give you notice of (i) certain Defaults and Events of Default under the Loan Agreement and (ii) certain consequences of such Defaults and Events of Default, (b) reserve all rights and remedies of the Agent and the Lenders under the Loan Agreement and all of the other Loan Documents and (c) give you notice of the Agent's intention to exercise certain remedies under the Loan Agreement.

1. **Notice of Defaults and Events of Default**. The Defaults and/or Events of Default described on Schedule 1 are continuing under the Loan Agreement (collectively, the "**Continuing Defaults**").

2. **Certain Consequences of the Continuing Defaults.** As a result of the Continuing Defaults:

(a) The Agent, on behalf of itself and the Lenders, may declare all Obligations immediately due and payable.

(b) Interest is accruing on the Obligations at the default interest rate provided in Section 2.5(c).

(c) As provided in Section 6.13 of the Loan Agreement (i) the Borrower and the other Loan Parties may not open new deposit accounts, securities accounts or Commodity Accounts and (ii) the Agent may issue a Notice of Exclusive Control in respect of any deposit account, securities account or Commodities Account.

(d) As provided in Section 9.1 of the Loan Agreement, the Agent may settle or adjust disputes and claims directly with Account Debtors for amounts on terms and in any order that Agent or any Lender considers advisable, notify any Person owing Borrower money of Agent's security interest in such funds, and verify the amount of such account.

(e) As provided in Section 9.4 of the Loan Agreement, the Agent may apply any funds in its possession, whether from Loan Party account balances, payments, proceeds realized as the result of any collection of Accounts or other disposition of the Collateral, or otherwise, to the Obligations in such order as the Agent shall determine in its sole discretion or as directed by the Required Lenders in their sole discretion.

(f) As provided in Section 9.1 of the Loan Agreement, the Agent is entitled to sell all or any portion of the Collateral.

(g) As provided in Section 9.2 of the Loan Agreement, each Loan Party has appointed Agent as its lawful attorney-in-fact and Agent is permitted to take any and all actions as set forth in such Section 9.2.

(h) As provided in Section 6.5 of the Loan Agreement, the proceeds payable under any insurance policy shall, at the Agent's option, be payable to the Agent on behalf of itself and the Lenders on account of the Obligations.

(i) As provided in Section 12.1 of the Loan Agreement, assignments of any Lender's obligations, rights and benefits under the Loan Agreement and the other Loan Documents shall not require written notice to the Borrower.

(j) As provided in Section 6.8 of the Loan Agreement, the Agent or any Lender, or its respective agents, may, without notice and at any time, inspect the

Collateral and audit and copy Borrower's Books.

(k) As provided in the definition of "Permitted Acquisition" in <u>Section 1.1</u> of the Loan Agreement, the Borrower may not consummate any Permitted Acquisition.

(l) Certain other rights, privileges and benefits which are available to the Loan Parties under the Loan Agreement or the other Loan Documents only when a Default and/or an Event of Default is not continuing will no longer be available to the Loan Parties.

(m) The Agent and the Lenders have available to them, and are entitled to exercise, in each case, all other rights and remedies accorded under the Loan Agreement and the other Loan Documents with respect to the Continuing Defaults and any other continuing Default or Event of Default.

3. **Reservation of Rights.** The Agent and the Lenders have not waived (a) the Continuing Defaults described above or any other Defaults or Events of Default that may be continuing under the Loan Agreement or (b) any of their respective rights or remedies arising from any Continuing Defaults or such other Defaults or Events of Default or otherwise available under the Loan Documents or at law. The Agent and the Lenders expressly reserve all such rights and remedies.

4. **Intention of Agent to Exercise Certain Remedies under the Loan Agreement**. The Agent and the Lenders are very concerned by the significant Continuing Defaults. The Agent and the Lenders are also very concerned with the engagement, attention and effectiveness of the Borrower's CEO in addressing the Continuing Defaults, and in addressing a host of urgent circumstances described in detail during the Borrower's Board of Directors meeting on November 10, 2017 (which Saif Mansour attended as an observer), including the Borrower's liquidity, senior management, relationships with suppliers and vendors and a credible offer to provide equity financing to address many of these issues.

The Agent and the Lenders do not require the Borrower to adopt a specific course of action to address the Continuing Defaults. However, unless the Continuing Defaults, and the concerns described above, are addressed to the satisfaction of the Agent and the Lenders by Wednesday, November 22, 2017, the Agent intends to accelerate the Obligations and demand immediate payment in full.

*[Signature page follows]*

Sincerely yours,

**BREAKWATER CREDIT OPPORTUNITIES FUND, L.P.**

By: **BREAKWATER INVESTMENT MANAGEMENT, LLC**, its general partner

By: _____
Name: Saif Mansour
Title: Managing Partner

cc: Members of the Board of Directors;
    Frederick F. Eisenbiegler, Esq., Morgan, Lewis & Bockius LLP

## Schedule 1

(a) <u>December 31, 2016 Financial Covenant Default.</u>  Based on information provided by the Borrower to the Agent, for the period ended December 31, 2016, the Borrower has breached the Minimum Subscribers covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending December 31, 2016.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(b) <u>June 30, 2017 Financial Covenant Default</u>.  Based on information provided by the Borrower to the Agent, for the period ended June 30, 2017, the Borrower has breached the Minimum Subscribers covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending June 30, 2017.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(c) <u>June 30, 2017 Financial Covenant Default</u>.  Based on information provided by the Borrower to the Agent, for the period ended June 30, 2017, the Borrower has breached the Minimum Revenue covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending June 30, 2017.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(d) <u>Reporting of Monthly Financial Statements Default</u>.  The Borrower has breached the covenant in <u>Section 6.2(b)</u> requiring that the Borrower provide monthly financial statements within 45 days after the end of each month.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(e) <u>Notice of Event of Default</u>.  The Borrower has breached the covenant in <u>Section 6.2(e)</u> requiring that the Borrower provide notice to the Agent upon its becoming aware of various Events of Default together with a detailed statement setting forth the steps being taken by the Loan Parties to cure the same.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(f) <u>Collateral Events of Default</u>.  Based on information provided by the Borrower to the Agent on March 7, 2017, the Borrower has (i) breached <u>Section 6.13</u> related to deposit account number 855657016 of the Borrower and deposit account number 41390376 of Loot Crate UK, Ltd. in relation to which Account Control Agreements were not executed prior to or at the time of opening such deposit accounts (the "**Deposit Account Default**"); and (ii) breached <u>Section 6.7(b)</u> by failing to notify the Agent of new registered Trademarks and applications for Trademarks and provide intellectual property security agreements and other documents and take such other actions as the Agent may request to perfect and maintain a first priority perfected security interest in such Trademarks and applications for Trademarks (the "**Trademarks Default**").  The Deposit Account Default is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement and the Trademarks Default is a continuing Event of Default under <u>Section 8.3(b)</u> of the Loan Agreement.

DB1/ 94468075.4

(g) <u>Reporting of Annual Financial Statements Default</u>.  The Borrower has breached the covenant in <u>Section 6.2(a)</u> requiring that the Borrower provide consolidated audited financial statements within 180 days after the end of the fiscal year ending December 31, 2016.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(h) <u>September 30, 2017 Financial Covenant Default.</u>  Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Cash covenant under <u>Section 7.12(a)</u> of the Loan Agreement for the fiscal quarter ending September 30, 2017.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(i) <u>September 30, 2017 Financial Covenant Default.</u>  Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Subscribers covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending September 30, 2017.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(j) <u>September 30, 2017 Financial Covenant Default.</u>  Based on information provided by the Borrower to the Agent, for the period ended September 30, 2017, the Borrower has breached the Minimum Revenue covenant under <u>Section 7.12(b)</u> of the Loan Agreement for the fiscal quarter ending September 30, 2017.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(k) <u>Disposition of Property</u>.  Borrower breached the covenant in <u>Section 7.1</u> requiring that Borrower receive the Agent's consent before disposing of Property with a value in excess of $250,000. Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(l) <u>Lease</u>.  Borrower breached the covenant in <u>Section 7.2</u> requiring that Borrower provide the Agent with advance written notice before entering into a lease on January 16, 2017 for a leased location located in the United Kingdom (which lease expires on January 31, 2018).  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(m) <u>Key Person</u>.  Borrower breached the covenant in <u>Section 7.2</u> when Eric Chan, a Key Person and the former Chief Financial Officer, resigned and was not replaced within 90 days of such resignation.  Such failure to comply is a continuing Event of Default under <u>Section 8.3(a)</u> of the Loan Agreement.

(n) <u>Other Defaults or Events of Default</u>.  Other Defaults or Events of Default may be continuing under the Loan Agreement.