Exhibit I

| | |
|---|---|
| From: | Michael Carney |
| Sent: | Fri 11/03/2017 6:59 PM (GMT-04:00) |
| To: | Mark Suster |
| Cc: | Christopher Davis; Ryan Hibbard; terry.boyle@gmail.com; Ynon Kreiz; Saif Mansour; Linda Menzel; Hobson, Nick; Stuart Lander |
| Bcc: | |
| Subject: | Loot Crate Series A-2 Term Sheet |
| Attachments: | Upfront Ventures - Loot Crate Series A-2 Term Sheet – 11.4.2017 EXECUTED.pdf |

Loot Crate Directors, investors, and counsel,

Please find attached the fully-executed Series A-2 Term Sheet from today's meeting.

Thank you

—

*Michael Carney*
Upfront Ventures

UCC_017325
UCC_017325

**TERM SHEET
FOR SERIES A-2 PREFERRED STOCK FINANCING OF
LOOT CRATE, INC.
November 3, 2017**

The following is a summary of the principal terms with respect to the proposed Series A-2 Preferred Stock financing of Loot Crate, Inc. a Delaware corporation (the "*Company*"). Except for the section entitled "Exclusivity & Confidentiality," such summary of terms does not constitute a legally binding obligation. Any other legally binding obligation will only be made pursuant to definitive agreements to be negotiated and executed by the parties. This Term Sheet is not a commitment to invest, and is conditioned on the completion of due diligence, legal review and documentation that is satisfactory to the Investors. This Term Sheet shall be governed in all respects by the laws of the State of Delaware.

**OFFERING TERMS**

| | |
|---|---|
| Closing Date: | As soon as practical following the Company's acceptance of this Term Sheet and satisfaction of the Conditions to Closing (the "*Closing*"), but no later than December 4, 2017. |
| Securities to be Issued: | Shares of Series A-2 Preferred Stock of the Company (the "*Series A-2 Preferred*"). The Series A-2 Preferred shall have a 3x liquidation preference that is senior to all other existing Preferred Stock of the Company immediately prior to closing (the "*Existing Preferred Stock*"). |
| | An existing investor in the Company (an "*Existing Investor*") holding Series A-1 Preferred Stock of the Company (the "*Series A-1 Preferred*") may exchange shares of Series A-1 Preferred for Series A-3 Preferred Stock of the Company (the "*Series A-3 Preferred*"), and an Existing Investor holding Series A Preferred Stock of the Company (the "*Series A Preferred*") may exchange shares of Series A Preferred for Series A-4 Preferred Stock of the Company (the "*Series A-4 Preferred*") as set forth in the section below entitled "Existing Investor Share Exchange." The Series A-3 Preferred and Series A-4 Preferred shall have a 3x liquidation preference on a *pari passu* basis to the Series A-2 Preferred and senior to the Existing Preferred Stock. |
| Amount Raised: | Up to $18,500,000 in new equity funding, not including the conversion of outstanding promissory notes (the "*Series A-2 Financing*"), but not less than $7,500,000 at Closing or less than $11,000,000 in total within 30 days after closing. |
| Investors: | Accredited investors approved by the Company (the "*Investors*") which shall include: |
| | • Upfront V, L.P.: $5,000,000, excluding the conversion of outstanding promissory notes ("*Upfront*"), with the option to invest up to an additional $2,500,000 up to 90 days after Closing.<br>• Breakwater and affiliates: Not less than $1,000,000 and best efforts to fund up to $3,000,000 ("*Breakwater*").<br>• Existing Investors holding Series A-1 Preferred and new investors (excluding affiliates and Limited Partners of Upfront and Breakwater): Not less than $1,500,000 at Closing and not less than $5,000,000 in total within 30 days after closing (together the "*Minimum Management Funding Thresholds*").<br>• Other Existing Investors holding Series A Preferred |
| Price Per Share: | Price per share for the Series A-2 Preferred (the "*Series A-2 Original Purchase Price*") shall be based on a fully-diluted post-money valuation of $95,000,000 including an available employee option pool representing 10.0% of the fully-diluted post-money capitalization. |

UCC_017326

UCC_017326

| | |
|---|---|
| | For avoidance of doubt, shares issued on conversion or exercise of all outstanding promissory notes and warrants, reserved in connection with the creation of an expanded option pool, and issuable in connection with any anti-dilution adjustment applicable to outstanding shares of Preferred Stock are included in the pre-money fully diluted share count. Additionally, any fees, warrants or additional share grants incurred or issued (or committed to be incurred or issued) in connection with the resolution of existing debt facilities, as described below, shall either be included in the pre-money fully diluted share count or, in the case of fees, reduce the pre-money valuation on a dollar-for-dollar basis, as appropriate. |
| Fallback Offer on Less than Minimum Funding Threshold: | In the event that the company fails to meet the Minimum Management Funding Thresholds, either at closing or 30-days post-closing, then:<br><br>i. the Series A-2 Original Purchase Price and the Series A Exchange Ratchet (defined below) shall be adjusted to be based on a fully-diluted post-money valuation of $75,000,000;<br><br>ii. the Series A-2, Series A-3, and Series A-4 liquidation preference shall each be amended from the current described 3x liquidation preference to 2x participating liquidation preference; and<br><br>iii. the available employee option pool shall be adjusted to represent 10.0% of the then fully-diluted post-money capitalization. |
| Dividends: | Non-cumulative dividends will be paid on the Senior Preferred (defined below) when and if declared by the Board. |
| Existing Investor Share Exchange: | Each Existing Investor holding Series A-1 Preferred (such Existing Investor, an "*Existing Series A-1 Holder*") that purchases the Minimum Amount (defined below) of Series A-2 Preferred (a "*Participating Investor*") shall have the right to exchange each one (1) share of Series A-1 Preferred held by such Existing Series A-1 Holder for one (1) share of Series A-3 Preferred.<br><br>Each Existing Investor holding Series A Preferred (such Existing Investor, an "*Existing Series A Holder*") that is a Participating Investor shall have the right to exchange each one (1) share of Series A Preferred held by such Existing Series A Holder for that number of shares of Series A-4 Preferred equal to the quotient of the Series A Original Issue Price divided by the Series A-2 Original Issue Price (the "*Series A Exchange Ratchet*").<br><br>The "*Minimum Amount*" means (a) in the case of Existing Series A-1 Holders, $250,000; and (b) in the case of Existing Series A Holders: (i) for those investors who have previously invested greater than or equal to $1,000,000 ("*Large A Investors*"), $1,000,000; and (ii) for those investors who have previously invested less than $1,000,000 ("*Small A Investors*"), $250,000. |
| Liquidation Preference: | Upon any liquidation of the Company, including any change of control (a "*Liquidation Event*"), the assets of the Company will be distributed:<br><br>First, to each share of the Series A-2 Preferred, Series A-3 Preferred and Series A-4 Preferred (collectively, the "*Senior Preferred*"), on a *pari passu* basis, an amount equal to three times (3x) the original issue price of each series of the Senior Preferred, plus any declared but unpaid dividends;<br><br>Second, after the payment above to the Senior Preferred in full, to each share of the Series A Preferred and Series A-1 Preferred (collectively, the "*Junior Preferred*"), on a *pari passu* basis, an amount equal to one times (1x) the original issue price of each series of the Junior Preferred, plus any declared but unpaid dividends; and<br><br>Third, after the payments above to the Senior Preferred and the Junior Preferred in full, |

| | |
|---|---|
| | to the Common Stock of the Company (the "***Common Stock***") on a *pari passu* basis. |
| Conversion: | Each share of the Senior Preferred initially converts 1:1 to Common Stock at any time at the option of the holder, subject to adjustments for stock dividends, splits, combinations and similar events and as described below under "Anti-dilution Provisions". |
| Voting Rights: | Votes together with the Common Stock on all matters on an as-converted basis. Approval of a majority of the outstanding Preferred Stock, voting as a single class, is required to (i) adversely change rights of the Preferred Stock; (ii) change the authorized number of shares; (iii) redeem or repurchase any shares (other than pursuant to the Company's right of repurchase at original cost); (iv) declare or pay any dividend; (v) change the number of directors or board observers; or (vi) issue any shares with rights, preferences and privileges that are senior to the Senior Preferred; (vii) liquidate or dissolve, including any change of control. Approval of the Board is required to liquidate any assets with aggregate value in excess of $500,000, including but not limited to business units, aged inventory, and property or equipment. |
| Board of Directors: | At the Closing, the Board shall consist of five (5) members comprised of: (i) one (1) representative designated by Upfront V, L.P. as the first Series A Director, who shall initially be Mark Suster; (ii) one (1) representative designated by Breakwater Credit Opportunities Fund, L.P. as the second Series A Director, who shall initially be Saif Mansour; (iii) one (1) CEO of the Company; and (iv) two (2) representatives as the Independent Directors to be nominated by the majority of the Preferred Stock and approved by the majority of the Common Stock (approval not to be unreasonably withheld), who will initially be Ynon Kreiz and Terry Boyle. |
| | In the event that Chris Davis is no longer the CEO of the Company, the Board shall be expanded to consist of seven (7) members comprised of: (i) one (1) representative designated by Upfront V, L.P. as the first Series A Director, who shall initially be Mark Suster; (ii) one (1) representative designated by Breakwater Credit Opportunities Fund, L.P. as the second Series A Director, who shall initially be Saif Mansour; (iii) one (1) CEO of the Company; (iv) one (1) representative designated by holders of the majority of the Company's Common Stock, to be Chris Davis for no less than 12 months following his removal as the CEO, and after which time Chris Davis can only be removed from the Board if the then-serving CEO of the Company recommends it to the Board and such removal is approved by a majority of the directors then-serving (excluding Chris Davis); and (v) three (3) representatives as the Independent Directors to be nominated by the majority of the Preferred Stock and approved by the majority of the Common Stock (approval not to be unreasonably withheld), who will initially be Ynon Kreiz and Terry Boyle, with a third seat to be filled at a later date. |
| Board Observers: | Both Upfront V, L.P. and Breakwater Credit Opportunities Fund, L.P. shall each maintain the right to appoint a representative to observe all meetings of the Board of Directors in a non-voting capacity as observers. |
| Existing Debt Resolution: | The investment will be subject to satisfactory resolution of the current default related to outstanding debt and satisfactory restructuring of covenants and terms therein, as determined by Upfront V, L.P. |
| | In connection with outstanding Company debt, (i) any breaches of existing debt covenants and negotiation of future debt covenants under the existing loan facility(ies) shall be resolved prior to and as a condition to closing of the Series A-2 Financing and approved by Upfront V, L.P., or (ii) such loan facility(ies) will be refinanced by a new debt provider approved by Upfront V, L.P., which such new debt facility shall close concurrently with the Series A-2 Financing. |
| | For avoidance of doubt, any additional termination or restructuring expenses incurred |

| | |
|---|---|
| | in conjunction with the resolution or restructuring of existing debt facility(ies) shall reduce the pre-money valuation of the Series A-2 Financing on a dollar-for-dollar basis, and any additional warrants or other securities issued to existing lender(s) in connection with such a termination or restructuring, and/or any new warrant coverage required by a new debt provider, will be included in the pre-money fully diluted share count. |
| Financial Governance: | The Series A-2 Financing will be conditioned on (i) a schedule of use of proceeds from the Series A-2 Financing that is mutually agreed upon by Upfront V, L.P. and the Company prior to Closing (ii) a monthly Operating Expenses budget and 2018 revenue and expense budget that is mutually agreed upon by Upfront V, L.P. and the Company prior to Closing, and (iii) a commitment to execute an authorized plan to immediately monetize obsolete inventory prior to the Closing. |
| Operational Reporting & Governance | Immediately upon Closing all departments and their respective senior managers within the Company shall temporarily report directly to the Company's Chief Operating Officer, currently Peter Lai (the "*COO*"), who shall report directly to the Chairman of the Board of Directors, currently Ynon Kreiz (the "*Chairman*"). This will remain in effect until the Company can recruit a senior executive on business operations who will separately report to the Chairman. |
| | For the avoidance of doubt, so long as he is the Company's Chief Executive Officer, Chris Davis (the "*CEO*"), will have no direct reports and will no longer manage the company's day-to-day operations. It is the Board's commitment to work with the CEO to define the roles and responsibilities on which the CEO will focus, subject to the foregoing. Cash controls must be in place such that the CEO cannot solely approve cash transactions without the signature of the most senior finance professional in the company and the CEO cannot commit the Company to any expenditures on a go-forward basis. |
| Anti-dilution Provisions | In the event the Company issues additional securities at a purchase price less than the then-current Series A-2 Preferred conversion price, then both the Series A-2 Preferred conversion price and the Series A-4 Preferred conversion price shall be adjusted in accordance with a full ratchet anti-dilution formula. |
| Hold-back Provision: | In the event that the Company is sold and the acquirer asks for funds to be held back or escrowed, the Company must ensure all Investors with liquidation preference are paid their full preference before any Investor proceeds are held back or escrowed. |
| Financial Information: | Investors who own a minimum of 750,000 shares ("*Major Investors*") will receive standard information and inspection rights and management rights letter. |
| Participation Right: | Major Investors will have the right to participate on a pro rata basis in subsequent issuances of equity securities. To the extent that a majority of Major Investors elect to waive these rights entirely or in part, then all Investors must reduce their pro rata participation in equal proportions. |
| Founder Matters: | Each Founder shall have assigned all relevant IP to the Company prior to Closing. |
| Hiring Inclusion Rule: | The Investors strive to invest in companies that are consciously working to create a diverse leadership team, one that's inclusive across gender, ethnicity, age and national origins. While Investors would never impose hiring decisions, we aim to reduce the potential impact of unconscious bias for key C-Level and senior roles within a company. We therefore ask that each portfolio company include an "inclusion rule" in its HR policies so that at least one woman and/or member of a population currently underrepresented within the Company shall be formally interviewed for any open executive position. |
| Conditions to | The investment will be subject to customary conditions, including but not limited to (i) completion of due diligence to the satisfaction of the Investors (including legal |

| | |
|---|---|
| Closing: | diligence, reference checks and validation of key business metrics presented by management), (ii) waiver by the Existing Series A Holders of any anti-dilution adjustments caused by the issuance any securities issued pursuant to this Series A-2 Financing and (iii) negotiation and execution of definitive agreements customary in transactions of this nature, including a legal opinion from the Company's legal counsel. |
| Counsel and Expenses: | Company counsel to draft closing documents, which documents will include standard representations and warranties by the Company, preferred director consent rights and standard right of first refusal and co-sale rights. The Company to pay all legal and administrative costs of the financing at Closing, including reasonable fees and expenses of Investor counsel up to $60,000. |
| Exclusivity and Confidentiality: | So long as the parties are moving forward with the completion of the transaction contemplated by this Term Sheet, the Company will not after the date of this Term Sheet solicit or encourage new proposals or initiate or engage in further discussions with respect to the sale of its stock or substantially all of its assets prior to the date that is ninety (90) days after the date of execution of this Term Sheet by both Upfront V, L.P. and the Company (the "*Exclusivity Date*"). |
| | Notwithstanding the foregoing, in the event the parties are still working towards a closing in good faith on the Exclusivity Date, the Exclusivity Date shall automatically be extended by 15 days. The terms and conditions of this term sheet are confidential information of the parties and shall not be disclosed without the written consent of the other party, except that each party may disclose this term sheet to its legal and other advisors as well as to potential investors acceptable to Upfront V, L.P. and the Company. |
| Expiration: | This Term Sheet expires at the end of the meeting of the Board on November 3, 2017, if not accepted by the Company by that date and time. |

SIGNATURE PAGE TO FOLLOW

By signing below you accept the proposed terms above. This Term Sheet is non-binding (except as to Exclusivity & Confidentiality) and a binding agreement will only exist when and if the parties execute definitive agreements with respect to the matters covered by this Term Sheet.

| COMPANY: LOOT CRATE, INC. | INVESTORS: UPFRONT V, L.P. |
|---|---|
| | By: Upfront GP V, L.P., its general partner |
| | By: Upfront Ventures Management, LLC, its Sole Manager |
| Name: Christopher Davis | Name: Mark Suster |
| Title: CEO | Title: Managing Partner |
| Date: 11/3/17 | Date: 11/3/17 |

UCC_017331
UCC_017326

**Exhibit A: Loot Crate Inc. Pro-Forma Capitalization**

UCC_017332

UCC_017326