Exhibit N

DRAFT

LOOT CRATE, INC.

Meeting of the Board of Directors

January 22, 2018

A meeting of the Board of Directors (the "*Board*") of Loot Crate, Inc., a Delaware corporation (the "*Company*"), was held on the above date at 8:00 a.m. PST following notice duly given to all of the directors. Present were the following directors: Chris Davis in person, Alex Zyngier by phone and Osman Khan in person. Also present in person were: Ryan Hibbard, Matthew Arevalo and David Chang of the Company, Saif Mansour of Breakwater Credit Opportunities Fund ("*Breakwater*"), Andrew Schoulder of Bryan Cave, special finance counsel to the Company, Linda Michaelson of Sheppard Mullin, corporate counsel to the Company, Michael Carney and Dana Kibler of Upfront Ventures, and Michael Solomon, consultant to the Company. Present by phone were: Linda Menzel of the Company, Mark Palmer of Theseus Strategy, Geoff Arens of Dendera Capital, Rick Eisenbiegler of Morgan Lewis, counsel to Breakwater, and Roy Fox of Sheppard Mullin. All participants could speak and hear one another.

Mr. Davis, presiding as Chairman of the meeting, called the meeting to order and reviewed the agenda for the meeting. Ms. Michaelson acted as Secretary of the meeting.

**Financing Update**

Mr. Davis summarized recent developments regarding negotiations with BioWorld for a financing arrangement in accordance with the term sheet. Mr. Davis informed the Board that BioWorld has now declined to provide the debt financing as anticipated. It is believed that their advisors are presenting heightened risk that has made BioWorld hesitant to move forward with the financing to take out the Breakwater debt. The Board discussed how the Company is continuing ongoing discussions regarding a smaller equity financing and will be working with them over the next 48 hours to discuss a potential deal. The Board further discussed how BioWorld stressed a need to see Q1 2018 performance before they are willing to close on a financing.

The Board then discussed that the next goals of the Company are to raise $10,000,000 in an equity financing while working on a forbearance agreement with Breakwater, with the plan to move towards an amendment and extension with Breakwater.

The Board discussed whether a BioWorld transaction is feasible. A discussion ensued regarding the benefits to BioWorld to invest in the Company.

Mr. Davis commented that the Company was reevaluating the 13 week cash flow, assuming no incoming financing. Mr. Hibbard addressed status with respect to the largest vendors. Mr. Solomon also added that the Company has reduced the cost structure by approximately $7 million in the last few weeks.

Mr. Eisenbiegler noted that with respect to Breakwater, for anything beyond a short term forbearance, there would need to be an equity raise of a minimum of $10 million in one closing and not in stages. He asked the Board whether the Company has discussed the equity financing with Upfront. Mr. Davis indicated that a new financing with Upfront has not been discussed and Ms. Kibler noted that Upfront was not actively discussing an investment.

Mr. Mansour presented Breakwater's forbearance terms. He indicated that there is a blueprint for an amendment with an equity group based on the November 3rd term sheet, but Breakwater would not be interested in an amendment and extension until it knows who the equity partner will be. When Mr. Mansour asked if there are any potential investors looking at the Company, Mr. Schoulder responded that between 8 to 10 funds are conducting diligence but their identities cannot be disclosed without consent.

Mr. Eisenbiegler provided a highlight of changes to the forbearance term sheet since the last draft, a copy of which had been provided to the Board. The Board asked several questions of Breakwater regarding interest rates, equity compensation, and a possible refinancing. The Board noted that the proposal would be reviewed in executive session. The Board discussed the benefits of continuing to work with Breakwater versus replacing the Breakwater debt.

Questions were raised regarding the Company's liquidity and cash. Mr. Davis indicated that the following week is a low billing period and key vendors are aware that the Company is working on financing. A discussion regarding the payables of the Company ensued. The Board noted that some contracts are being renegotiated. The Board agreed that it was important to close a financing in the next several weeks.

Mr. Davis led a discussion regarding the 2018 plan, discussing price increases and decreases in operating expenses with the close of the London office, the warehouse relocation, and a reduction in employees. A discussion ensued regarding gross profit percentages and marketing expenses. Mr. Khan asked Mr. Mansour for his reaction to the plan, who commented on the effort to rationalize operating expenses and raised a concern about customer loyalty. The Board also discussed the need for management to focus on governance. After hearing the plan, Mr. Mansour commented that it had enough merit to allow Breakwater to work with the Company toward an amendment or refinance. Mr. Davis discussed that the Company is putting together a plan for new product offerings and is in discussions with several licensors with an update on the new product lines and launches to be provided in the next month. The Board highlighted that the new equity financing and amendment of the Breakwater financing will allow the Company to create a new budget to move forward.

**Forbearance Agreement**

Mr. Mansour and Mr. Eisenbiegler left the meeting so that the Board and its representatives could further discuss the Forbearance Agreement. Several issues were raised, including rates, liquidation preferences, and timing. The Board also discussed the difficulty to close an equity round without the forbearance agreement. Several attendees discussed negotiating only an extension and amendment without a forbearance, but the Board discussed how Breakwater was not willing to do so until there is an equity partner. In addition, several issues were raised regarding the equity consideration. The Board discussed an approach pursuant to which equity consideration would only be given in an amendment and extension, not in forbearance.

Finally, the Board discussed a restructuring of the organization chart, including building out employees into separate teams with more efficient reports. It was noted that the marketing team in particular needs an updated leadership structure.

**Approval of Option Grants**

The Board discussed the offer of option grants (the "*Options*") to several employees, both new hires and in connection with promotions. Mr. Davis raised various reasons for the grants, including that all full time employees get some stock grants. Upon motion duly made and seconded, it was:

UFV-038950

-3-

RESOLVED, that the Board hereby authorizes the issuance of the Options under the Company's 2012 Stock Plan (the "Plan") to the individuals, and for the number of shares, as set forth on Schedule I attached hereto.

RESOLVED FURTHER, that the exercise price of the Options shall be $5.42 per share, which is equal to the current fair market value of the Company's Common Stock.

RESOLVED FURTHER, that the grant date for the Options shall be the date of this meeting of the Board.

RESOLVED FURTHER, that the Board hereby determines that the Options shall have the vesting schedules set forth on Schedule I.

RESOLVED FURTHER, that the grant of the Options shall be conditioned upon execution of stock option agreements (the "Grant Agreements"), in substantially the forms previously approved by the Board.

RESOLVED FURTHER, that the Options shall have such terms and conditions as are set forth in the applicable Grant Agreement.

RESOLVED FURTHER, that the shares subject to the Options shall, when issued in accordance with the provisions of the Plan and the applicable Grant Agreement, constitute validly issued, fully-paid and non-assessable shares of Common Stock of the Company.

RESOLVED FURTHER, that the proper officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to cause to be prepared the Grant Agreements pursuant to the Plan reflecting the terms of the Options as set forth herein, and to take such other actions as may be necessary or advisable in order to carry out the purposes and accomplish the intent of the foregoing resolutions, and all prior actions taken by such officers in connection herewith are hereby confirmed, ratified and approved in all respects.

**Approval of Change of Control Awards**

The Board discussed the offer of Change of Control Awards to be awarded to employees who were terminated after 2 or more years of service to the Company. Mr. Zyngier expressed questions and concerns over the appropriateness of such offers. The Board discussed such awards as a policy of the Company and a form of incentive that is becoming more prevalent in similar companies and makes the Company more competitive. The Board requested that in the future the Plan be updated so that the options have longer post-termination exercise periods rather than having to make such awards.

Upon motion duly made and seconded, it was:

RESOLVED, that the Award Agreement, in substantially the form attached hereto as Exhibit A, is hereby adopted and approved.

RESOLVED FURTHER, that the Board hereby grants to each Award Recipient an Award based on the number of vested shares as of such Award Recipient's termination of employment set forth on Schedule II.

UFV-038951

-4-

      RESOLVED FURTHER, that the cash payment pursuant to the Award Agreement be calculated based on the exercise price of the original grant of the stock option award to each Award Recipient, as set forth on <u>Schedule II</u>.

**<u>Adjournment</u>**

There being no further business to come before the meeting, the meeting was adjourned at approximately 12:15 p.m. PST.

UFV-038952

## Schedule I

### Option Grants

| Name of Grantee | Vesting Commencement Date | Number of Shares | Vesting Schedule |
|---|---|---|---|
| Chandima Wickramasinghe | 8/14/2017 | 2,500 | [1] |
| George Haralambous | 8/21/2017 | 10,000 | [1] |
| Michael Fontaine | 9/25/2017 | 1,000 | [1] |
| Soobin Kang | 10/9/2017 | 1,000 | [1] |
| Dan Gillespie | 9/18/2017 | 1,000 | [1] |
| Christine Chang | 8/26/2017 | 5,000 | [1] |
| Amy Louie | 8/26/2017 | 2,500 | [1] |
| David Chang | 7/11/17 | 5,000 | [1] |
| David Chang | 8/11/17 | 15,000 | [1] |
| Peter Lai | 10/9/2017 | 100,000 | [1] |
| Thanh Ho | 10/9/2017 | 500 | [1] |
| Erik Reynolds | 10/27/2017 | 5,000 | [1] |
| Davin Riley | 8/1/17 | 5,000 | [2] |
| Michael Schroeder | 11/13/17 | 10,000 | [2] |
| Carolyn Fiero | 11/13/17 | 1,000 | [1] |
| Marisha Fradiue | 11/20/17 | 500 | [1] |
| Long Le | 11/20/17 | 1,000 | [1] |
| Sarah Ngo | 11/26/17 | 2,500 | [1] |
| Lili Guerrero Valencia | 12/5/17 | 500 | [1] |
| Fabian Junio | 12/26/17 | 500 | [1] |
| Natalie Hazan | 1/2/18 | 500 | [1] |

<u>Vesting Schedules:</u>

1. One-fourth (1/4th) of the shares subject to the option shall vest on the one-year anniversary of the vesting commencement date. Thereafter, one forty-eighth (1/48th) of the total number of shares subject to such option shall vest upon the expiration of each full calendar month of the grantee's continuous service to the Company for the next thirty-six (36) months such that all such options shall be vested on the last day of the month in which the four-year anniversary of the vesting commencement date falls.
2. All of the shares subject to the option shall vest on the grant date.

UFV-038954

## Schedule II

### Change in Control Awards

| Award Recipient | Original Grant Date | Vested Shares | Exercise Price |
|---|---|---|---|
| Richard Amaro | 4/1/15 | 1,510 | $7.83 |
| Richard Amaro | 5/9/16 | 146 | $9.56 |
| Christopher Lee | 4/1/15 | 1,510 | $7.83 |
| Christopher Lee | 5/9/16 | 1,271 | $9.56 |
| Shawn Aldridge | 10/30/15 | 1,291 | $9.56 |
| Shawn Aldridge | 5/9/16 | 99 | $9.56 |
| Adam Murray | 11/30/15 | 229 | $9.56 |
| Adam Murray | 5/9/16 | 84 | $9.56 |
| Kristi Banando | 7/30/15 | 270 | $7.83 |
| Kristi Banando | 5/9/16 | 163 | $9.56 |
| Matthew Kessler | 11/30/15 | 229 | $9.56 |
| Matthew Kessler | 5/9/16 | 32 | $9.56 |
| Garrett Mills | 11/30/15 | 2,291 | $9.56 |
| Garrett Mills | 5/9/16 | 123 | $9.56 |
| Jefferey Wright | 4/1/15 | 1,562 | $7.83 |
| Jefferey Wright | 5/9/16 | 266 | $9.56 |
| Kristopher Clemente | 7/30/15 | 2,812 | $7.83 |
| Kristopher Clemente | 5/9/16 | 210 | $9.56 |
| Roberto Martinez | 4/1/15 | 687 | $7.83 |
| Roberto Martinez | 5/9/16 | 159 | $9.56 |
| Melissa Bliss | 7/20/15 | 1,562 | $7.83 |
| Melissa Bliss | 5/9/16 | 168 | $9.56 |
| Matthew Leung | 4/1/15 | 1,666 | $7.83 |
| Matthew Leung | 5/9/16 | 209 | $9.56 |
| Megan Cain | 12/31/15 | 500 | $7.83 |
| Megan Cain | 5/9/16 | 16 | $9.56 |
| Samuel Glasgow | 6/1/15 | 6,458 | $7.83 |
| Samuel Glasgow | 5/9/16 | 569 | $9.56 |