## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Old LC, Inc. *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No.  19-11791 (BLS) |
| Official Committee of Unsecured Creditors of Old LC, Inc., *et al.*, for and on behalf of the estates of Old LC, Inc., *et al.*,<br>   *The Committee,*<br>v.<br><br>Upfront V, LP, Breakwater Credit Opportunities Fund, L.P., *et al.*,<br>   *Defendants*. | Adv. No. 20-51002 (BLS) |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF BREAKWATER DEFENDANTS

Pursuant to Federal Rule Bankruptcy Procedure 7056, Defendants Breakwater Credit Opportunities Fund, L.P. ("Breakwater"), Saif Mansour, Aamir Amdani, Eric Beckman, Darrick Geant, and Joseph Kaczorowski (together with Breakwater, the "Movants"), submit this Statement of Undisputed Material Facts in support of the *Motion for Partial Summary Judgment of the Breakwater Defendants*  [Dkt. No. [D.I. 46].[1]

1.  Breakwater, Loot Crate's senior secured lender, held a minority of Loot Crate's preferred shares from at least June 1, 2016 through the Petition Date.  *See* Declaration of Shannon B. Wolf ("Wolf Decl."), Exhibit A.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the *Memorandum of Law in Support of Motion for Partial Summary Judgment of Breakwater Defendants,* filed contemporaneously herewith.

2.      Breakwater held 174,912 shares, approximately ten percent, of Loot Crate's Series A Preferred Shares in Loot Crate and acquired its preferred shares for approximately $2,000,000. Wolf Decl., Ex. A, Schedule of Purchasers.

3.      Upfront held 1,093,202 shares, approximately forty-five percent, of Loot Crate's Series A Preferred Shares and acquired its preferred shares for approximately $12,500,000.  Wolf Decl., Ex. A, Schedule of Purchasers.

4.      Together, Breakwater and Upfront held more than 50% of Loot Crate's issued Series A Preferred Shares. Wolf Decl., Ex. A, Schedule of Purchasers.

5.      The holders of Loot Crate's preferred shares were entitled to a liquidation preference over the common stock.  Wolf Decl., Ex. B, Section 2(a).

6.      The Amended and Restated Certificate of Incorporation of Loot Crate, Inc. requires that "[a]t any time when shares of Preferred Stock are outstanding, the Corporation shall not, without first obtaining the affirmative vote or written consent of the holders of a majority of the voting power represented by the then outstanding shares of Preferred Stock, voting together as a single class on an as-converted basis: (a) amend this Amended and Restated Certificate of Incorporation or the Bylaws of the Corporation in any manner that adversely affects the Preferred Stock (b) increase or decrease the total number of authorized shares of the Common Stock or the Preferred Stock." Wolf Decl., Ex. B, Sections 6(a)-(b).

7.      On June 1, 2016, Breakwater and Loot Crate entered into the Loan Agreement which provided Loot Crate with $20,000,000 in term loan financing, with interest and principal payable monthly.  Wolf Decl., Ex. C, Section 2.4.

8.      In a letter agreement dated June 16, 2016, Loot Crate granted Breakwater the right to appoint one Board Observer to attend all meetings of Loot Crate's board and the committees of the board in a nonvoting capacity.  Wolf Decl., Ex. D.

9.      The Loan Agreement entered into by Breakwater and Loot Crate obligated Loot Crate to meet certain minimum cash, revenue and subscriber targets, and to refrain from taking on new debt, making changes to senior management or key personnel or opening new offices without Breakwater's consent. The Loan Agreement also included comprehensive and restrictive affirmative and negative covenants and events of default, including financial reporting obligations, restrictions on additional debt, liens, investments, acquisitions, noticing obligations for certain changes (for example, changes in management), the requirement of Account Control Agreements, and protection of certain intellectual property (which served as collateral under the Loan Agreement).  Wolf Decl., Ex. C, Sections 6.2; 6.7(b); 6.13; 7.2; and 7.12.

10.     In January 2017, Loot Crate leased a location in the United Kingdom without advanced written notice to Breakwater, breaching Section 7.2 of the Loan Agreement.  Loot Crate's failure to comply with the covenant in Section 7.2 was a continuing Event of Default under Section 8.3(a) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

11.     In March 2017, Loot Crate failed to execute the required Account Control Agreements in a timely fashion, in breach of Section 6.13 of the Loan Agreement.  Loot Crate's failure to do so was a continuing Event of Default under Section 8.3(a) of the Loan Agreement. Wolf Decl., Exs. E, F, and G.

12.     In March 2017, Loot Crate failed to notify Breakwater of new registered Trademarks and applications for Trademarks, therefore, breaching 6.7(b) of the Loan Agreement.

Loot Crate's failure to comply with 6.7(b) was a continuing Event of Default under Section 8.3(b) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

13.     Loot Crate failed to provide consolidated audited financial statements within 180 days after the end of the fiscal year ending December 31, 2016 in breach of Section 6.2(a) of the Loan Agreement.  From and after July 1, 2017, Loot Crate's failure to comply with Section 6.2(a) was a continuing Event of Default under Section 8.3(a) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

14.     Loot Crate breached the minimum revenue covenant under Section 7.12(b) of the Loan Agreement for the fiscal quarter ending June 30, 2017. Its failure to comply was a continuing Event of Default under Section 8.3(a) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

15.     Loot Crate failed to provide monthly financial statements within 45 days after the end of each month, in violation of Section 6.2(b) of the Loan Agreement, and breached Section 6.2(e) by failing to cure such default after becoming aware of various Events of Default.  These failures constituted continuing Event of Defaults under Section 3.8(a) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

16.     Loot Crate breached the minimum cash, revenue and subscriber financial covenants under Section 7.12 of the Loan Agreement for the period ending September 30, 2017.  Its failures were continuing Events of Default under Section 8.3(a) of the Loan Agreement.  Wolf Decl., Exs. E, F, and G.

17.     Chris Davis, the CEO of Loot Crate, acknowledged the various existing Events of Default in his execution of the First Forbearance Agreement.  Wolf Decl., Ex. G.

18.     At a meeting of the Loot Crate board on August 25, 2017, Chris Davis discussed Loot Crate's "near-term fundraising needs," including the "need to raise additional capital to address [Loot Crate's] liquidity challenges." Wolf Decl., Ex. H, August 25, 2017 Minutes.

19.     In October 2017, Loot Crate's board of directors "instructed management to pursue potential financing opportunities with urgency and deliver any financing proposals to the board for consideration." Wolf Decl., Ex. H, October 18, 2017 Minutes.

20.     In November 2017, Loot Crate's management put three proposals before the board: (1) the A-2 Proposal; (2) the Original BioWorld Proposal; and (3) the Management Proposal. Wolf Decl., Ex. H, November 3, 2017 Minutes.

21.     The A-2 Proposal, for which a term sheet was executed on November 3, 2017, contemplated up to $18,500,000 in new equity funding in exchange for a new issuance of preferred stock. Accredited investors approved by Loot Crate, including Breakwater and other existing Loot Crate investors, could participate. Wolf Decl., Ex. I.

22.     The A-2 Proposal indicated that the new preferred would enjoy a 3x liquidation preference over the existing preferred stock. Wolf Decl., Ex. I.

23.     The A-2 Proposal required that Chris Davis "have no direct reports and will no longer manage the company's day-to-day operations. . . . Cash controls must be in place such that [Davis] cannot solely approve cash transactions without the signature of the most senior finance professional in the company and [Davis] cannot commit the Company to any expenditures on a go-forward basis." Wolf Decl., Ex. I.

24.     Both Breakwater and Upfront supported the A-2 Proposal. Wolf Decl., Ex. H, November 3, 2017 Minutes.

25.     BioWorld Merchandising, Inc., a vendor of Loot Crate's, submitted the Original BioWorld Proposal, which contemplated a new issuance of up to $10,000,000 in new Series B preferred stock and up to $5,000,000 in subordinated convertible debt, with terms "subject to consent from the Company's Senior Secured Lender."  Wolf Decl., Ex. J.

26.     Each of Breakwater and Upfront advised Loot Crate's board of directors that it would not agree to compromise its contractual rights in the manner proposed in the Original BioWorld Proposal.  Wolf Decl., Ex. H, November 3, 2017 Minutes.

27.     Loot Crate's board of directors noted that the contract rights of Breakwater and the Series A holders would have to be compromised for the Original BioWorld Proposal to be viable. Wolf Decl., Ex. H, November 3, 2017 Minutes.

28.     The Management Proposal contemplated a contribution of up to $10,000,000 in exchange for new preferred equity in the form of Series B preferred stock.  Wolf Decl., Ex. K.

29.     Each of Breakwater and Upfront advised the Loot Crate board that "neither Breakwater nor Upfront Ventures would approve the BioWorld Proposal or the Management Proposal without a full ratchet anti-dilution adjustment for the Series A Preferred Stock" and they would not agree to compromise contractual rights in the manner proposed in either the Original BioWorld or the Management Proposal.  Wolf Decl., Ex. H, November 3, 2017 Minutes.

30.     The investment contemplated by the Management Proposal was subject to the "satisfactory resolution of the potential default related to outstanding debt [i.e., the Loan Agreement] and satisfactory restructuring of covenants and terms therein." Wolf Decl., Ex. K.

31.     The Management Proposal placed restrictions on Chris Davis's authority as CEO, indicating that "[c]ash controls must be in place such that the CEO cannot solely approve cash transactions without the signature of the most senior finance professional in the company and the

CEO cannot commit the Company to any expenditures on a go forward basis." Wolf Decl., Ex. K.

32.    The Management Proposal required resolution of "any breaches of existing debt covenants," and renegotiation of "future debt covenants under the existing loan facility(ies)" or refinancing. Wolf Decl., Ex. K.

33.    Loot Crate's board acknowledged the Management Proposal's deficiencies, uncommitted financing and the necessity for modification of Breakwater's contract rights. Wolf Decl., Ex. H, November 3, 2017 Minutes.

34.    At a November 3, 2017 meeting of the Loot Crate board, the board rejected the Management Proposal and the Original BioWorld Proposal and unanimously approved the A-2 Proposal. Wolf Decl., Ex. H, November 3, 2017 Minutes.

35.    On November 16, 2017, Chris Davis revoked his consent to the A-2 Proposal and informed Loot Crate's board that additional proposals would be sought. Wolf Decl., Ex. L.

36.    On November 17 and 20, 2017, Breakwater served Loot Crate with formal notices of loan defaults. Wolf Decl., Exs. E & F.

37.    With Breakwater's support, Loot Crate explored refinancing the Breakwater loan with BioWorld. Wolf Decl., Ex. M.

38.    At a  January 22, 2018 meeting of the Loot Crate board, Chris Davis informed the Loot Crate board that BioWorld was no longer interested in refinancing the Breakwater loan, as BioWorld's advisors "are presenting [to Bioworld] heightened risk that has made BioWorld hesitant to move forward with the financing to take out the Breakwater debt"  and that BioWorld "needed to see Q1 2018 performance before they are willing to close on a financing." Wolf Decl., Ex. N.

39.     The Loot Crate board negotiated a forbearance with Breakwater and discussed it at the January 22, 2018 board meeting.  Wolf Decl., Ex. N.

40.     On February 9, 2018, Breakwater and Loot Crate entered into an initial forbearance agreement, in which Loot Crate acknowledged its defaults and Breakwater agreed to "forbear from exercising certain rights and remedies available" for a short period.  In exchange for Breakwater's forbearance, Loot Crate promised to pursue new equity financing, "on terms satisfactory to [Breakwater]."  Wolf Decl., Ex. G.

41.     Loot Crate and Breakwater entered into the Second Forbearance on May 8, 2018, after Loot Crate was unable to find new equity financing as required under the initial forbearance agreement.  Wolf Decl., Ex. O.

42.     Saif Mansour joined the Loot Crate board on May 24, 2018.  Wolf Decl., Ex. Q, May 24, 2018 Minutes.

43.     In the Second Forbearance, Loot Crate agreed to, among other things, "[c]onsummate one or more debt or equity financings in form and substance and on terms satisfactory to [Breakwater] and pursuant to document and a capital structure approved by [Breakwater] (which shall require, among other things, that such equity include a satisfactory liquidation preference) which shall (i) be accompanied by evidence of approval by [Loot Crate's] board of directors (and common and/or preferred shareholders as necessary), (ii) provide liquidity in a single or series of issuances, to [Loot Crate] in an aggregate amount of not less than $3,000,000 . . . , and (iii) shall be consummated by, and funds thereunder shall be received by [Loot Crate] on or before, the date that is sixty (60) days after the Effective Date." Wolf Decl., Ex O, Section 8(d).

44.     In June, Loot Crate received and showed Breakwater a term sheet for $3,200,000 in proposed financing by South River Capital.  The South River Proposal required a 6.0% annual

cash coupon in the form of a "facility fee" and had cross default and acceleration provisions with the Loan Agreement. Wolf Decl., Ex. Q.

45.    Aamir Amdani, on behalf of Breakwater, specified that Breakwater required that, as long as the senior debt was unsatisfied, the subordinated loan would have to (i) pay no cash interest or amortization, (ii) not mature until six months outside of the Breakwater loan, (iii) contain no financial covenants, and (v) have no ability to accelerate.  Wolf Decl., Ex. R.

46.    Upon Loot Crate's failure to "[c]onsummate one or more debt or equity financings in form and substance and on terms satisfactory to [Breakwater] and pursuant to document and a capital structure approved by [Breakwater]," as required by the Second Forbearance, Breakwater named Eric Beckman, Darrick Geant, Joe Kaczorowski and Aamir Amdani as directors of Loot Crate.  These new directors joined the Loot Crate board on July 24, 2018.  Wolf Decl. Exs. O and P, Amendment to Voting Agreement; and Ex. S, July 24, 2018 Minutes.

47.    On August 2, 2018, the board's Strategic Transaction Committee approved a refinancing of the Breakwater Loan.  Mansour, the only Breakwater affiliate on the Strategic Transaction Committee, abstained from the vote.  Eric Beckman, Darrick Geant, Joe Kaczorowski and Aamir Amdani each did not vote nor attend this Strategic Transaction Committee session. Wolf Decl. Ex. S, August 2, 2018 Minutes.

48.    On August 6, 2018, Saif Mansour, Eric Beckman, Darrick Geant, Joe Kaczorowski and Aamir Amdani each resigned as directors of Loot Crate.  Wolf Decl. Ex. T.

Dated: June 17, 2021                          **MORGAN, LEWIS & BOCKIUS LLP**
Wilmington, Delaware

By:  _/s/ Jody C. Barillare_
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone: (302) 574-7294
Email: jody.barillare@morganlewis.com

Sabin Willett (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

Shannon B. Wolf (*pro hac vice*)
One State Street
Hartford, CT 06103-3178
Tel. (860) 240-2700
shannon.wolf@morganlewis.com

*Attorneys for Movants Breakwater Credit Opportunities Fund, L.P., Saif Mansour, Aamir Amdani, Eric Beckman, Darrick Geant, and Joseph Kaczorowski*