IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | § | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | § | |
|---|---|---|
| Official Committee of Unsecured Creditors of Old LC, Inc., et al., for and on behalf of the estates of Old LC, Inc., *et al.*; | § § § § | |
| | § | |
| *Plaintiff,* | § § | |
| v. | § | Adv. No. 20-51002 (BLS) |
| | § | |
| Upfront V, LP, Breakwater Credit Opportunities Fund, L.P.; Upfront GP V, LLC; Mark Suster; Dana Kibler; Gregory Bettinelli; Saif Mansour; Aamir Amdani; Eric Beckman; Darrick Geant; and Joseph Kaczorowski | § § § § § § § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S MOTION TO DENY OR CONTINUE BREAKWATER'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO PERMIT NECESSARY DISCOVERY AND <u>MOTION TO COMPEL DEPOSITIONS</u>**

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

PROCEDURAL HISTORY......................................................................................................... 3

    A.    The Parties Agree to Pursue Document Discovery and an Early Mediation ................. 3

    B.    The Breakwater Defendants Reverse Course and Choose Not to Pursue
           an Early Mediation. ........................................................................................................ 3

ARGUMENT AND AUTHORITIES..........................................................................................4

    A.    Given the Nature of Discovery Pending Here, Courts Routinely Grant
           Rule 56(d) Motions "As a Matter of Course" to Permit a
           Fully-Developed Summary Judgment Record Prior to Ruling ......................................4

    B.    The Discovery Sought by Plaintiff is Necessary to its Opposition to the
           MSJ Because Depositions of the Director Defendants Drive to the Heart
           of the Fact-Intensive Inquiries Surrounding Good Faith,
           Disinterestedness, Independence, Control, and Motive ..................................................6

    C.    Breakwater's Main Summary Judgment Authority Demonstrates the Need
           for a Denial or Continuance Under Rule 56(d) .............................................................. 8

    D.    The Document Discovery Conducted Thus Far Reveals a Conspiracy
           Between Upfront and Breakwater that is Riddled with Fact Issues that
           Can Only be Explored Through Depositions and Remaining Discovery .....................10

CONCLUSION.......................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Basho Tech. Holdco B., LLC v. Georgetown Basho Invs., LLC*,
 2018 WL 3326693 (Del. Ch. July 6, 2018) .............................................................. 6, 7

*Cede & Co. v. Technicolor, Inc.*,
 634 A.2d 345 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994) ....... 10

*Del. Cty. Emps. Ret. Fund v. Sanchez*,
 124 S.3d 1017 (Del. 2015)............................................................................................. 7

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*,
 624 A.2d 1199 (Del. 1993) ....................................................................................... 8, 10

*Dieckman v. Regency GP LP*,
 No. 11130-CB, 2018 WL 1006558 (Del. Ch. Feb. 20, 2018) ...................................... 9

*Doe v. Abington Friends School*,
 480 F.3d 252 (3d Cir. 2007) ..................................................................................... 4, 5

*Dubroff v. Wren Hldgs., LLC*,
 No. 3940-VCN, 2009 WL 1478697 (Del. Ch. May 22, 2009) .................................... 7

*In re Cysive, Inc. S'holders Litig.*,
 836 A.2d 531 (Del. Ch. 2003) ..................................................................................... 7

*In re DSI Renal Hldgs., LLC*,
 574 B.R. 446 (Bankr. D. Del. 2017)........................................................................ 6, 7

*In re SemCrude*,
 No. 09-50038, 2011 WL 2471002 (Bankr. D. Del. June 20, 2011) .................. *passim*

*Klein v. Wasserman*,
 No. 2017-0643-KSJM, 2019 WL 2296027 (May 29, 2019) ................................. 8, 10

*Odyssey Partners v. Fleming Co.*,
 735 A.2d 386 (Del. Ch. 1999) ("*Odyssey II*") ......................................................... 9, 10

*Odyssey Partners v. Fleming Co.*,
 No. 14770, 1998 WL 157367 Del. Ch. Mar. 5, 1998) ("*Odyssey 1.5*") ...................... 8

*Odyssey Partners, v. Fleming Co.*,
 No. 14770, 1996 WL 422377 (Del. Ch. July 24, 1996) ("*Odyssey 1*") ...................... 8

*St. Surin v. V.I. Daily News, Inc.*,
  21 F.3d 1309 (3d Cir. 1994) .............................................................................................. 5

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
  119A.3d 44 (Del. Ch. 2015) ............................................................................................ 7

*Voigt v. Metcalf*,
  No. 2018-0828-JTL, 2020 WL 614999 (Del. Ch. Feb. 10, 2020) ............................................ 7

*Williamson v. Cox Commc'ns, Inc.*,
  2006 WL 1586375 (Del. Ch. June 5, 2006) ...................................................................... 7

*Zimmerman v. Crothall*,
  No. 6001-VCP, 2012 WL 707238 (Del. Ch. Mar. 5, 2012) .............................................. 6, 7

## OTHER AUTHORITIES

FED. R. BANKR. P. 7056 ............................................................................................................. 5

FED. R. CIV. P. 56 ............................................................................................................... *passim*

Pursuant to Federal Rules of Civil Procedure 56(d) and 37, Plaintiff Official Committee of Unsecured Creditors of Old LC, Inc. ("**Plaintiff**") files this *Motion to Deny or Continue Breakwater's Motion for Partial Summary Judgment to Permit Necessary Discovery and Motion to Compel Depositions* (the "**Motion**"). In support thereof, Plaintiff respectfully shows the Court as follows:

## I.
## INTRODUCTION

The Breakwater Defendants[2] proclaim that Plaintiff's claims are "doomed to fail" and that, as a result, everyone can avoid the expense of discovery. [D.I. 58 (the "**Motion for Protective Order**")]. Parties in litigation do not get to make the rules, revise the rules, or arbitrarily decide whether claims are valid or not. Notwithstanding Breakwater's attempt to usurp this Court's decision-making, there are a "potpourri of legal and factual questions"[3] in this adversary proceeding that make discovery (including depositions of each defendant) essential and proportional to the needs of this $100 million case. Yet, Breakwater is unwilling to permit such discovery to go forward and hopes to escape its misconduct by evading depositions so it never has to attempt to justify its wrongdoing under oath.

As will be explained in Plaintiff's forthcoming response, Breakwater's Motion for Partial Summary Judgment (the "**MSJ**") and its attempt to arbitrarily stay discovery is premised upon a complete mischaracterization of Plaintiff's claims. Breakwater alleges that the entirety of Plaintiff's case is premised on the theory that Breakwater only breached its fiduciary duties by

---

[2] The term "**Breakwater Defendants**" or "**Breakwater**" collectively refers to Breakwater Credit Opportunities Fund, L.P.; Saif Mansour; Aamir Amdani; Eric Beckman; Darrick Geant; and Joseph Kaczorowski. The term "**Upfront Defendants**" or "**Upfront**" collectively refers to Upfront V, LP; Upfront GP V, LLC; Mark Suster; Dana Kibler; and Gregory Bettinelli.

[3] This phrase is what *Breakwater* uses to describe the adversary proceeding while, at the same time, moving for summary judgment. *See* Breakwater's Memorandum of Law in Support of Motion for Partial Summary Judgment of Breakwater Defendants, at 1 [D.I. 47].

exercising contractual rights. This belief is incorrect. It does, however, set-up a nice strawman for Breakwater to use in supporting its scheme of delaying discovery. Notwithstanding Breakwater's misrepresentation of Plaintiff's theory, and as will be explained further in Plaintiff's response to the MSJ, Plaintiff's claims against Breakwater revolve around more than just the mere exercise of contractual rights. Moreover, Plaintiff has asserted claims against Breakwater's agents who also served as directors and who did not have the "contractual rights" like Breakwater did. Thus, even if Breakwater exercised its contractual rights, that does not preclude breach of fiduciary duty claims against individuals and entitles Plaintiff to the discovery necessary to prepare its case.

Simply stated, Loot Crate did not go from a company valued at approximately $100 million to bankrupt merely because Breakwater decided to exercise its contractual rights. Rather, from 2016 to 2019, Breakwater and Upfront conspired together in ways that led to the Company's demise, including by breaching their fiduciary duties through acting in their own interests rather than as proper fiduciaries of Loot Crate. Although the document discovery thus far reveals much of the Breakwater Defendants' misconduct, bad faith, and breach of fiduciary duties, depositions of the Breakwater Defendants (and all defendants) are essential to permit investigation into the motives, coordination, cooperation, and ultimate conspiracy between Upfront and Breakwater.

For the reasons explained below, and pursuant to Rule 56(d), Breakwater's MSJ should either be denied with leave to re-file after discovery, or the Court should continue any hearing on the MSJ and Plaintiff's response in opposition to 30 days after completion of all discovery.

# II.
# PROCEDURAL HISTORY

A. **The Parties Agree to Pursue Document Discovery and an Early Mediation.**

From the beginning of this adversary proceeding, the parties agreed to explore the potential for an early and efficient resolution through document discovery and early mediation. On December 15, 2020, Upfront's counsel proposed moving mediation dates *sooner* in the proposed scheduling order so that it would occur shortly after necessary document production. *See* Exhibit A. In subsequent drafts reviewed by Breakwater's counsel, the concept of an early mediation with document discovery never changed. *See* Exhibits B and C. Instead, the only dispute concerned whether the parties would agree to limit such pre-mediation to document discovery alone. This dispute culminated in submission of competing scheduling orders through a *Certificate of Counsel* on January 11, 2021. [D.I. 23].

Upon learning that the Breakwater Defendants and the Upfront Defendants had not shared each other's productions in response to the Debtors' 2004 motions, Plaintiff readily produced those documents in February and March 2021. Thereafter, Plaintiff proceeded to produce 43,439 pages of Debtors' documents.

B. **The Breakwater Defendants Reverse Course and Choose Not to Pursue an Early Mediation.**

Following Plaintiff's final production, Plaintiff made numerous attempts to gauge the parties' interest in the mediation. Despite the parties' prior agreements, Breakwater went silent. In light of Breakwater's silence, Plaintiff emailed counsel on June 7, 2021 to discuss available deposition dates for four of the Breakwater Defendants. *See* Exhibit D. Breakwater did not respond. On June 11, 2021, Plaintiff emailed counsel again concerning deposition availability. *See* Exhibit E. Breakwater did not respond. Having received no response, Plaintiff once again

3

emailed counsel on June 16, 2021 proposing dates for the depositions. *See* Exhibit F. For the first time, Breakwater responded indicating their plan to file a motion for summary judgment.

In light of Breakwater's complete 180, Plaintiff moved expeditiously to serve necessary discovery. On June 18, 2021 (one day after the Breakwater Defendants filed their MSJ), Plaintiff served requests for production and interrogatories on the Breakwater Defendants focused almost exclusively on factual assertions made in the pending MSJ. *See* Exhibit G. On June 21, 2021, Plaintiff served deposition notices for four of the Breakwater Defendants and one Upfront representative, setting the depositions for mid-July and August. *See* Exhibit H. And on June 23, 2021, Plaintiff served notice of document subpoenas to (i) Atalaya Capital Management LP, (ii) South River Capital, LLC, (iii) Morgan Lewis & Bockius, and (iv) BioWorld Merchandising, Inc.—relevant non-parties who should have documentation concerning Breakwater's misconduct. *See* Exhibit I. On June 22, 2021 (five days ***after*** filing the MSJ), the Breakwater Defendants made a supplemental production of documents, including documents that are relevant to the issues raised in their MSJ.

## III.
## ARGUMENT AND AUTHORITIES

**A. Given the Nature of Discovery Pending Here, Courts Routinely Grant Rule 56(d) Motions "As a Matter of Course" to Permit a Fully-Developed Summary Judgment Record Prior to Ruling.**

It is "well established" that courts in the Third Circuit are "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007); *In re SemCrude*, No. 09-50038, 2011 WL 2471002, at *5 (Bankr. D. Del. June 20, 2011) (Shannon, J.). Upon a non-movant's showing that it cannot present facts essential to justify its opposition to a pending summary judgment, Federal Rule 56(d) provides that the court may (i) defer consideration of a motion for summary judgment, (ii) allow

4

time to permit discovery, or (iii) issue "any other appropriate order." FED. R. BANKR. P. 7056; FED. R. CIV. P. 56(d). Accordingly, courts in the Third Circuit "usually grant" properly filed Rule 56(d) motions "as a matter of course," particularly where the facts sought are in the possession of the party moving for summary judgment. *In re SemCrude*, 2011 WL 2471002, at \*\*5-6.

A party moving for relief under Rule 56(d) must submit an affidavit or declaration specifying "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Id.* at \*5. The court should resolve a pending motion requesting relief under Rule 56(d) prior to proceeding to the merits of a summary judgment motion. *Id.* at \*6 (citing *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1315 (3d Cir. 1994).

In *Doe v. Abington Friends*, the Third Circuit vacated a district court's decision to grant summary judgment because the plaintiff was not "given an opportunity to marshal facts in aid of their argument." *Doe*, 480 F.3d at 259. In reaching its conclusion, the Third Circuit provided reasoning that applies equally to Breakwater's pending summary judgment. The court explained, "[a]s any practicing attorney can attest, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure." *Id.* at 256. "Discovery digs subsurface and may unearth facts that tend to support the contrary conclusion" to what is being argued by the summary judgment movant." *Id.* at 259. Therefore, district courts "usually grant properly filed Rule 56(f) motion as a matter of course," particularly "when there are discovery requests outstanding or relevant facts are under control of the moving party." *Id.* at 257. The court vacated the grant of summary judgment because the relevant question—whether the defendant qualified under a religious exemption—was a mixed question of law and fact that depending upon "the existence of a record sufficient to decide it." *Id.* at 258.

5

**B. The Discovery Sought by Plaintiff is Necessary to its Opposition to the MSJ Because Depositions of the Director Defendants Drive to the Heart of the Fact-Intensive Inquiries Surrounding Good Faith, Disinterestedness, Independence, Control, and Motive.**

Like *SemCrude*, the discovery sought here "bears directly on the merits of the [MSJ]." *In re SemCrude*, No. 09-50038, 2011 WL 2471002, at *6 (Bankr. D. Del. June 20, 2011) (Shannon, J.). The written discovery requests served on June 18, 2021 (Exhibit G) seek documents and information directly related to factual assertions made by the Breakwater Defendants in their MSJ. Although the Breakwater Defendants try to characterize all relevant inquiries as simply matters of law, the factual assertions in their MSJ tell otherwise. Similarly, depositions of each Defendant are essential to Plaintiff's summary judgment response in order to understand the full extent of Defendants' motives, coordination, and actions that occurred outside of the documents.

Here, Plaintiff's affirmative discovery (including its pending written discovery and its pending and forthcoming deposition notices) will uncover facts concerning the following exemplar of issues that are necessary and essential to Plaintiff's summary judgment response:

- The nature, extent, connection, collaboration, and coordination between Breakwater and Upfront concerning their control of Loot Crate, including whether Breakwater utilized threats and demands to preclude other financing opportunities in improper ways as a controlling shareholder.[4]

- Breakwater's awareness, knowledge, review, approval, rejection, or modification of emails sent by Upfront or its agents to Loot Crate relating to Loot Crate's business.[5]

- Breakwater's awareness, knowledge, participation in, and assistance with the recruitment of purportedly "independent" directors such as Kreiz and Boyle.

---

[4] When a shareholder's aggression, threats, disruptions, and punitive behavior are beyond the realm of ordinary advocacy, that shareholder's behavior contributes to an inference that it was a controlling shareholder. *See Basho*, 2018 WL 3326693, at *28 n.323 (collecting cases), 31-32 (cataloging a controlling shareholder's interference with third-party financing and use of threats to interfere with management), 34 (describing a controlling shareholder's threats of litigation and insolvency to coerce favorably deal terms).

[5] Finally, even in the absence of an overt agreement, courts look to communications between control group members to determine whether they support an inference that the members in fact acted in concert. *See Zimmerman*, 2012 WL 707238, at *11; *see also In re DSI Renal Hldgs.*, 574 B.R. at 473-74.

- Breakwater's awareness, knowledge, participation in, and assistance with the covert recruitment of former Loot Crate officers to reconstitute Loot Crate's leadership with its own hand-picked people. and

- Beyond the written emails, what oral discussions occurred outside of emails and letters, including how often Breakwater and Upfront communicated.

- Whether the individuals who served as directors/observers fulfilled their fiduciary duties to Loot Crate, including whether Defendant Mansour fulfilled his fiduciary duties agreed-upon as a Board Observer in the Side Letter attached hereto as <u>Exhibit W</u>.

- The interestedness or independence of Ynon Kreiz or Terry Boyle to properly evaluate the various transactions and issues.[6]

- The fact-intensive analysis of whether Breakwater was a controlling shareholder.[7]

- The fact-intensive analysis of whether Breakwater was in a control group with Upfront.[8]

---

[6] Whether an individual director is independent is a highly fact intensive inquiry, requiring a case-by-case analysis. *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119A.3d 44, 61 (Del. Ch. 2015). Given its fact-driven nature, there are no "bright-line tests" for determining whether a director is independent. *Id.* For the same reason, allegations relating to director independence must be "considered in full context." *Del. Cty. Emps. Ret. Fund v. Sanchez*, 124 S.3d 1017, 1022 (Del. 2015). At the pleading stage, the plaintiff's allegations must only support a reasonable inference that a board member was subject to the influence or control of a controlling shareholder. *Voigt*, 2020 WL 614999, at *14, 16.

[7] Determining whether the combination of a shareholder's powers makes it a controlling shareholder is a highly fact intensive analysis that is rarely appropriate to resolve on a motion to dismiss. *See Voigt v. Metcalf*, No. 2018-0828-JTL, 2020 WL 614999, at *12 nn.8, 9 (Del. Ch. Feb. 10, 2020); *In re Cysive, Inc. S'holders Litig.*, 836 A.2d 531, 550–51 (Del. Ch. 2003). In analyzing whether a shareholder effectively wields controlling power over a transaction or decision, courts look to several factors. *See id.* at *25-28 (providing a summary of the nonexhaustive factors court have analyzed in controlling shareholder cases); *Voigt*, 2020 WL 614999, at *11-13 (same). To analyze these factors, courts look to the allegations of control as a whole, rather than discrete actions.11 *Basho*, 2018 WL 3326693, at *28; *Voigt*, 2020 WL 614999, at *13. Although a single act or source of control standing alone may not be enough to establish control in its own right, courts must collectively analyze allegations regarding a shareholder's actions, sources of control, and exercise of influence to determine whether a plaintiff has sufficiently pled controlling shareholder status. *Id.* at *13.

[8] A control group exists when two or more shareholders are "connected in some legally significant way—e.g., by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal." *Dubroff v. Wren Hldgs., LLC*, No. 3940-VCN, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009). Courts analyze the allegations as a whole to determine whether a plaintiff has adequately alleged facts that support an inference that shareholders cooperated to exert control over a company. *See Williamson*, 2006 WL 1586375, at *4-5; *In re DSI Renal Hldgs., LLC*, 574 B.R. 446, 473-74 (Bankr. D. Del. 2017); *Zimmerman v. Crothall*, No. 6001-VCP, 2012 WL 707238, at *11-12 (Del. Ch. Mar. 5, 2012). For example, the allegation that the shares of multiple minority shareholders collectively amount to a majority of voting shares supports an inference of a control group. *See id.* at *11. The ability of control group members to veto a decision by the board "is significant for analysis of the control issue" even if the members never affirmatively exercise their veto right, because it gives the members control over the company's deal-making power. *See Williamson*, 2006 WL 1586375, at *5.

- The fact-intensive analysis of whether Breakwater and the individual directors acted in good faith or in bad faith in connection with their decisions.[9]

- The motives and reasoning behind Breakwater's course of conduct that ultimately led to Loot Crate's demise.[10]

### C. Breakwater's Main Summary Judgment Authority Demonstrates the Need for a Denial or Continuance Under Rule 56(d).

Interestingly, the case that the Breakwater Defendants rely upon the most in their MSJ—*Odyssey*—also demonstrates why relief under Rule 56(d) is appropriate here. In their MSJ, the Breakwater Defendants point to "*Odyssey*"[11] and "*Odyssey II*" as supporting their arguments. [D.I. 47, at 13-14]. However, they fail to inform the Court about "*Odyssey 1.5*" where the Court **denied** a motion for summary judgment because the court's "review of the record leaves me with the distinct impression that it is ***desirable to try the matter to permit a more thorough inquiry into the facts*** to clarify the application of the law to the circumstances." *Odyssey Partners v. Fleming Co.*, No. CIV.A. 14770, 1998 WL 157367, at *1 (Del. Ch. Mar. 5, 1998) ("*Odyssey 1.5*") (emphasis added). Among other reasons, the court found that summary judgment was improper because he was concerned by the "lack of recall of significant events and issues exhibited by certain defense witnesses ***in their deposition testimony***." *Id.* (emphasis added). The court also explained that it would be "useful" to have a more complete record of the consideration given by various directors to the availability of alternatives other than foreclosure. *Id.* In denying summary judgment, the

---

[9] A "fairly pleaded claim of good faith/bad faith raises essentially a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery."20 *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.,* 624 A.2d 1199, 1208 (Del. 1993).
[10] *Klein v. Wasserman*, Case No. 2017-0643-KSJM, 2019 WL 2296027, at *6 (May 29, 2019).
[11] In *Odyssey*, the court actually denied the defendant's motion to dismiss that asserted the very same argument the Breakwater Defendants assert in their MSJ. *Odyssey*, Civ. A. No. 14770, 1996 WL 422377 (Del. Ch. July 24, 1996). Specifically, the court rejected defendant's argument that it could not be liable for simply exercising their contractual rights because the complaint alleged facts that, if true, constituted a violation of fiduciary duties that were not dependent upon the exercise of creditor rights. *Id.* at *4. As will be explained in Plaintiff's Opposition to the MSJ, the same is true here. Plaintiff's First Amended Complaint alleges facts that are true and that demonstrate a violation of the Breakwater Defendants' fiduciary duties to Loot Crate. Accordingly, *Odyssey* and *Odyssey 1.5* all demonstrate that the claims are not appropriate or ripe for consideration at the summary judgment phase.

court wanted to "reach a conclusion with confidence about issues relating, for example, to the independence and good faith of the Holding directors, and the degree of control exercised by Fleming Companies, Inc. over Holding, or those directors." *Id.* At the trial, the court utilized its evaluation of the credibility and character of the witnesses to reach its decision (something not available at the summary judgment stage). For example, the court stated, "[m]y review of the record and observation of the character and demeanor of the witnesses at the trial convinces me that the majority of the board was not dominated or controlled by Fleming." *Odyssey II*, 735 A.2d 386, 407 (Del. Ch. 1999).

The same issues identified by the court in *Odyssey 1.5* to deny summary judgment apply equally here and demonstrate the necessity for allowing the depositions and written discovery to go forward prior to any ruling on the summary judgment. Indeed, the court in *Odyssey 1.5* utilized the inability of witnesses to recall certain facts during their deposition as a basis to deny summary judgment. Further, like in *Odyssey 1.5*, a critical issue here involves determining both the disinterestedness and independence of directors and whether Breakwater, Upfront, or the two entities together, constituted a control group under applicable Delaware law. And as to all Defendants, whether they acted in good faith will be fully explored and uncovered during depositions. Presently, based on the document discovery conducted thus far, there are numerous questions and issues surrounding every Defendants' motive in taking or not taking certain action during the relevant time. Therefore, the Court should utilize the same reasoning adopted by the court in *SemCrude* and *Odyssey 1.5* to either deny Breakwater's MSJ or continue the deadline for any response so that Plaintiff has adequate time to conduct the necessary and essential discovery.

D. **The Document Discovery Conducted Thus Far Reveals a Conspiracy Between Upfront and Breakwater that is Riddled with Fact Issues that Can Only be Explored Through Depositions and Remaining Discovery.**

Beyond *SemCrude* and *Odyssey 1.5*, fundamental Delaware corporate law demonstrates the necessity and essential nature of taking the depositions of the Director Defendants prior to any ruling on a summary judgment.

Under Delaware law, "the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994). "Delaware courts have recognized that a course of conduct designed to disrupt the operations of a company may constitute a breach of fiduciary duty." *Klein v. Wasserman*, Case No. 2017-0643-KSJM, 2019 WL 2296027, at *6 (May 29, 2019). Moreover, in evaluating claims of good faith/bad faith against fiduciaries, Delaware courts explain that such issues "raise[] essentially a question of fact which generally cannot be resolved on the pleadings or ***without first granting an adequate opportunity for discovery***." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993). Indeed, the essential nature of a director's depositions in a case like this one was clearly explained in *Dieckman v. Regency GP LP*, Case No. 11130-CB, 2018 WL 1006558, at *3 (Del. Ch. Feb. 20, 2018):

> Accordingly, objective factors may inform an analysis of a defendant's subjective belief to the extent they bear on the defendant's credibility when asserting he believed a transaction was in the best interests of the partnership. When a court undertakes such an analysis, the directors' personal knowledge and experience will be relevant to a subjective good faith determination, which must focus on measuring the directors' approval of a transaction against their knowledge of the facts and circumstances surrounding the transaction.

Here, Breakwater's MSJ reflects numerous assumptions that their subjective beliefs are objective in nature. Further, Breakwater's MSJ assumes that this case is merely about the exercise

of contractual rights. These assumptions are incorrect and demonstrate the need for depositions prior to ruling on summary judgment. As demonstrated through the list above, there are numerous factual issues that can only be explored through the pending document discovery and through depositions of all Defendants. While the document discovery conducted to date reveals a conspiracy and scheme by Breakwater and Upfront to work together to improperly influence and control the Company in a way that caused its ultimate demise, there is more to the story that can only be uncovered through depositions.

As explained in the First Amended Complaint, and as will be demonstrated in Plaintiff's response to the MSJ, the document discovery reveals numerous instances of actions, coordination, and cooperation by and between both Breakwater and Upfront: their agreement in the Carry the Water Email, their coordination to install Kreiz and Boyle on the board, the collective use of their Preferred Shares to block funding proposals from BioWorld and Loot Crate's management team, the development and implementation of the Playbook, the use of Breakwater's Loan Agreement and May 2018 Forbearance Agreement to wrest total control of the board, and their coordinated campaign to interfere with Loot Crate's management. *See, e.g.,* Exhibits J-V.

Although Plaintiff has documents to support its claims and theories, Defendants' deposition will be critical for understanding the motive, mindset, and collaboration concerning these events. Therefore, ruling on the summary judgment without first allowing depositions and written discovery would be counter to Rule 56(d).

## V.
## CONCLUSION

For each of these reasons, Plaintiff respectfully requests that the Court grant this Motion, deny Breakwater's MSJ pursuant to Rule 56(d), compel the necessary depositions and grant Plaintiff all relief to which it is entitled, whether at law or in equity.

Dated: June 25, 2021
Wilmington, Delaware

Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

- and -

Joel B. Bailey, Esquire
Joshua L. Hedrick, Esquire
**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9625
Facsimile: (214) 481-1844
E-mail: Josh@HedrickKring.com
E-mail: Joel@HedrickKring.com

- and -

Samuel M. Stricklin, Esquire
**STRICKLIN LAW FIRM, P.C.**
Palisade Central II
2435 North Central Expressway
Suite 1200
Richardson, Texas 75080
Telephone 972-2388687
E-mail: Sam.stricklin@stricklaw.pro

*Counsel for Plaintiffs*