## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| | § | |
| Official Committee of Unsecured Creditors | § | |
| of Old LC, Inc., et al., for and on behalf of | § | |
| the estates of Old LC, Inc., *et al.*; | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Adv. No. 20-51002 (BLS) |
| | § | |
| Upfront V, LP, Breakwater Credit | § | |
| Opportunities Fund, L.P.; Upfront GP V, | § | |
| LLC; Mark Suster; Dana Kibler; Gregory | § | |
| Bettinelli; Saif Mansour; Aamir Amdani; | § | |
| Eric Beckman; Darrick Geant; and Joseph | § | |
| Kaczorowski | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF PURPORTEDLY PRIVILEGED DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiff Official Committee of Unsecured Creditors of Old LC, Inc. ("**Plaintiff**") files this *Motion to Compel Production of Purportedly Privileged Documents* (the "**Motion**"). In support thereof, Plaintiff respectfully shows the Court as follows:

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

**I.**

**INTRODUCTION**

The A-2 Playbook exemplifies the coordination and collusion utilized by the Defendants to protect their own interests at Loot Crate's expense and in violation of Defendants' fiduciary duties as controlling shareholders and individual directors. The A-2 Playbook:

(i)     Has been referred to approximately 70 times on the public docket (including in 10 different docket entries) (Exhibits A-J);

(ii)    Was quoted from and referenced extensively in both Plaintiff's Original Complaint and First Amended Complaint (Exhibits J, E);

(iii)   Was referenced and itself included as exhibit T to Plaintiff's Motion to Deny or Continue Breakwater's Motion for Partial Summary Judgment (Exhibit I);

(iv)    Was marked, without objection, as Deposition Exhibit 1 in the very first deposition taken in this matter (Exhibit K);

(v)     Was referenced in depositions (without objection) (Exhibits K-M); and

(vi)    Has been described in media articles, including by the *Wall Street Journal*, and is, therefore, in the public domain not only through the Court's docket, but also online for the world to see (Exhibit N).

However, less than twelve hours before the first deposition of an Upfront representative, the Upfront Defendants—for the first time—issued a clawback letter claiming that the A-2 Playbook was privileged and inadvertently produced. (Exhibit O).

Under the Federal Rules of Evidence and established case law from across the nation, the Upfront Defendants waived any attorney-client privilege[2] that applied to the A-2 Playbook by waiting approximately one year to issue a clawback letter after the document had been relied-upon and publicly disclosed since the beginning of the case. The Upfront Defendants' "Johnny come lately" assertion of privilege is not enough to justify existence of the privilege. *See F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 74 (D. My. 1998).

---

[2] The Upfront Defendants do not assert that anything other than the attorney-client privilege protects disclosure of the A-2 Playbook.

13130389.v1

Moreover, even if the Upfront Defendants did not waive the attorney-client privilege for the A-2 Playbook, the A-2 Playbook does not reflect the giving or receiving of legal advice whatsoever. Rather, the A-2 Playbook reflects business strategy ("game theory") associated with what strategic steps Defendants intended to take depending on certain events, including how Defendants would coordinate their efforts with one another to achieve their desired outcome.

Because of either the Upfront Defendants' waiver of the attorney-client privilege or because the A-2 Playbook contains no legal advice, Plaintiff is further entitled to the other documents and communications identified on the Upfront Defendants' privilege log relating to the A-2 Playbook.

Finally, the Breakwater Defendants intentionally waived the attorney-client privilege by disclosing the "Carry the Water" email with the Upfront Defendants in 2017. (Exhibit P). As the email reflects, the Breakwater Defendants' counsel, Morgan Lewis, provided detailed advice for how Breakwater should coordinate and collude with Upfront to achieve its own selfish outcomes. Although the initial email was solely from Morgan Lewis to Breakwater, the Breakwater representative subsequently forwarded the email to one of the Upfront Defendants, Greg Bettinelli. Therefore, considering this intentional waiver of privilege, Plaintiff is entitled to the entirety of the Carry the Water email along with all documents and communications relating to the subject matter it describes.

As one court explained, "if a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications *like jewels—if not crown jewels*." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (emphasis added). This same court reasoned that attorney-client communications "must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their

13130389.v1

own precautions warrant." *Id.* Here, the Upfront Defendants' production of a purportedly privileged playbook and the Breakwater Defendants intentional disclosure of the Carry the Water email fail to reflect the type of concern and protection that courts require for invoking the attorney-client privilege.

Therefore, the Court should find that (i) the Upfront Defendants waived any attorney-client privilege that purports to apply to the A-2 Playbook and, as a result, waived any privilege for documents and communications concerning the subject matter of the A-2 Playbook, (ii) even if no waiver exists, the A-2 Playbook does not reflect the seeking or providing of legal advice and, therefore, Plaintiff is entitled to all documents and communications relating to the A-2 Playbook, and (iii) the Breakwater Defendants intentionally waived the privilege concerning the Carry the Water email and Plaintiff is entitled to all documents and communications relating to the subject matter of the email itself.

## II.
## ARGUMENT AND AUTHORITIES

### A.  Legal Standard

The attorney-client privilege protects (1) communications, (2) made between privileged persons (such as attorney and client), (3) in confidence, and (4) for the purpose of obtaining or providing legal assistance or advice for the client.  *See, e.g., In re Teleglobe Comms. Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994).  While the attorney-client privilege encourages "full and frank communication" between attorneys and clients, the privilege should be construed narrowly because it "obstructs the truth-finding process." *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 802 (3d Cir. 1979) (explaining that the privilege should be "strictly confined within the narrowest possible limits

13130389.v1

consistent with the logic of its principle").  "[O]nce a client has revealed privileged information to a third party, the basic justification for the privilege no longer applies."  *Id.* at 1423-24 (quoting Comment, *Stuffing the Rabbit Back into the Hat: Limited Waiver of the Attorney-Client Privilege in an Administrative Agency Investigation*, 130 U. Pa. L. Rev. 1198, 1207 (1982)).  Thus, in *Westinghouse*, the Third Circuit held that the disclosure of privileged information to the SEC and DOJ operated as a complete waiver of the attorney-client and work product privileges as to all adversaries in other litigation.

**B.  The Upfront Defendants Waived the Attorney-Client Privilege Concerning the A-2 Playbook.**

In the case of a purportedly inadvertent disclosure (like the A-2 Playbook), Federal Rule of Evidence 502(b) applies to the waiver analysis.  This rule provides:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b) (emphasis added).  Even when the disclosure is involuntary, "courts will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter."  *Kavakich v. N. Franklin Township*,  No. 06-1109, 2009 WL 605881, at *3 (W.D. Pa. Mar. 9, 2009) (quoting *United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992)).

Here, the Upfront Defendants' waiver of any privilege covering the A-2 Playbook is supported by (i) the delay in their attempted clawback, (ii) the nature and extent of public

disclosure of the A-2 Playbook prior to any objection, (iii) the unobjected use of the A-2 Playbook during depositions, and (iv) principles of fundamental fairness.

> 1. The Upfront Defendants Waited More Than 11 Months to Attempt to Claw-Back the A-2 Playbook.

First, a waiver finding is appropriate because the A-2 Playbook was produced by the Upfront Defendants approximately ***one year*** before their attempted clawback and has been relied-upon extensively for approximately the same time.

To determine whether a waiver of the privilege occurred, courts routinely examine the amount of time between production of the subject document and the producing party's attempted clawback. For example, a Delaware federal court found the analogous work product privilege was waived because the producing party failed to clawback the documents until "approximately five months after they were produced." *In re Hechinger Inv. Co. of Del.*, 303 B.R. 18, 25 (D. Del. 2003).[3] Similarly, in *Kavakich v. N. Franklin Township*, the court found waiver of any privilege, in part, because of the producing party's delay in seeking its return in seeking to retrieve the purportedly privileged documents. No. 06-1109, 2009 WL 605881, at *2 (W.D. Pa. Mar. 9, 2009). In support, the court relied-upon a case from a different circuit finding waiver where the asserting party "waited six months to attempt to recover a seized document." *Id.* at *3; *see also Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013) (collecting cases and explaining that "the courts have emphasized that clawback requests should be made immediately, with delays of even a few weeks determined to be too long, much less nearly two months"); *Murray v. Gemplus Intern., S.A.*, 217 F.R.D. 362, 366 (E.D. Pa. 2003) (finding that disclosure of privileged document was not inadvertent where the party "became aware of its

---

[3] Unlike the defendants in *Hechinger*, here, Plaintiff is not attempting to "drive a bulldozer" through waivers by the Defendants. Rather, Plaintiff's request for a finding of waiver and subject matter waiver are focused specifically to the subject matter of the purportedly privileged documents.

disclosures no later than May 30, 2003, yet took absolutely no action to recover its documents until August 19, 2003—eleven weeks after Gemplus was informed of the disclosure and one week after Plaintiff filed the instant Motion to Compel").

Here, the Upfront Defendants produced the A-2 Playbook in September 2020 in response to the 2004 examination that occurred in the main bankruptcy proceeding.  (Exhibit Q). Approximately one year later, and after the A-2 Playbook was repeatedly disclosed and relied-upon starting in November (discussed below), the Upfront Defendants suddenly decided the A-2 Playbook was privileged.  Such a delay far exceeds the periods of delay other courts have found constituted a waiver of the privilege.  Accordingly, the Court should find that the Upfront Defendants waived any privilege over the A-2 Playbook given the time between production and their attempted clawback.

    2.   The A-2 Playbook has been Publicly Disclosed and Relied-Upon and Cited Almost 70 Times Throughout the Adversary Proceeding.

The nature and extent of the A-2 Playbook's disclosure also demonstrates waiver.  The A-2 Playbook has been cited and discussed approximately 70 times on the Court's public docket. (Exhibits A-J).  Plaintiff quoted directly from the A-2 Playbook in both its Original and Amended Complaints.  (Exhibits J, E).  The A-2 Playbook itself is attached as exhibit T to Plaintiff's Motion to Deny or Continue Breakwater's Motion for Partial Summary Judgment filed on June 25, 2021. (Exhibit I).  Therefore, the A-2 Playbook has been publicly discussed since November 3, 2020, and has itself been publicly available since June 25, 2021.

In addition to disclosures on the Court's docket, the A-2 Playbook was also discussed and identified in at least one media article published by the *Wall Street Journal* concerning this proceeding.  (Exhibit N).  This article is available publicly to the *Wall Street Journal's* more than 3 million subscribers.

13130389.v1

The Upfront Defendants' own attempt to clawback the document demonstrates the practical inability to clawback the document itself. Specifically, in the clawback email, the Upfront Defendants do not copy or include anyone from Debtor or Debtors' counsel requesting the return of the document itself. Yet, the Upfront Defendants produced the A-2 Playbook to the Debtors' counsel in September 2020. So, the very people that the Upfront Defendants initially produced the A-2 Playbook to are not included on the clawback request.

The nature and extent of this public disclosure begs the question, "How can a document that has been shared so widely actually be clawed back?" Common sense dictates the answer that, "It can't." To truly claw this document back, the Upfront Defendants would need to contact not only Plaintiff's counsel, but also Debtors' counsel, the *Wall Street Journal*, and anyone who has an internet connection and could download a copy of the A-2 Playbook itself. Setting aside the lunacy behind such a task, the Upfront Defendants have yet to even make any attempt to seal or remove references to the Playbook from the public docket.

Therefore, the nature and extent of the publication of the A-2 Playbook demonstrates the need for a waiver finding.

3. <u>The A-2 Playbook has been Used During Depositions.</u>

Presently, the parties have taken six depositions and consecutively numbered deposition exhibits 1-88. Tellingly, Deposition Exhibit 1 is the A-2 Playbook. (<u>Exhibit K</u>). In other words, the very first deposition marked and used (without objection) is the document that the Upfront Defendants now say is privileged.

Courts routinely point to the usage of a purportedly privileged document during a deposition without objection as a basis to support a waiver finding. *Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, No. 06-607, 2007 WL 2823337, at *2 (W.D. Pa. Sept. 26, 2007) (finding waiver because defendants permitted the witness to "read his notes into the record, counsel did not

intervene during the deposition when the purportedly protected information was revealed, and the defendants did not assert attorney-client privilege until twelve days thereafter"); *Kavakich v. N. Franklin Township*,  No. 06-1109, 2009 WL 605881, at *2 (W.D. Pa. Mar. 9, 2009) (supporting its waiver decision by explaining, "[a]t no time during the deposition did Johnson assert that these letters were confidential or subject to privilege"); *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa. 2004) (finding waiver of privilege where the movant disclosed privileged communications to a third party during her deposition testimony); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 206-07 (5th Cir. 1999) (finding waiver of the attorney-client privilege because the privilege proponent did not object to all questions designed to elicit information about privileged communications and did not halt responses to all such questions by the witnesses); *F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 73-74 (D. My. 1998) ("Counsel did not object to the use of the [purportedly privileged] document at the July 29, 1997 deposition . . .") *Sidney I. v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 217-18 (N.D. Ill 2011) (finding that privilege proponents did not take reasonable steps to rectify inadvertent production by not raising a privilege objection to the documents at the deposition despite opposing counsel reading from the documents and introducing them into the record); *Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013) (finding waiver of document utilized at a deposition without objection).

Here, the A-2 Playbook has been marked and discussed, without objection, in multiple depositions.  (Exhibit K-M).  Therefore, the Court should find a waiver has occurred.

### 4.  Fairness Dictates a Waiver Finding.

Finally, fundamental fairness, including the undue prejudice caused by the Upfront Defendants' dilatory clawback, demonstrates the need for a waiver finding.

"Whether fundamental fairness weighs for or against waiver largely depends on the extent of the reliance the party has made on the document in its case." *F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 78-79 (D. My. 1998) (collecting cases).  In *F.C. Cycles*, the court held that a waiver finding was fundamentally fair since "plaintiff has significantly relied upon the disclosed document." *Id.* at 79.  Moreover, the document had "worked its way into the fabric of the case," including that the purportedly privileged document was part of the "warp and woof" of the plaintiff's story and theory of the case.  *Id.* at 78; *see also Atronic Intern. GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 166 (E.D.N.Y. 2005) (finding that the defendant "may be prejudiced by restoring immunity to the inadvertently disclosed emails" given the claims and defenses in the case, including that the purportedly privileged emails "go to the heart of this breach of contract litigation").

Here, as in the cases cited above, the A-2 Playbook has "worked its way into the fabric" of this case.  The document exemplifies Defendants' hand-in-hand coordination and collusion to pursue their selfish goals and to bring the company down.  Just as a football coach and his quarterback may call multiple plays in the huddle to audible from one to the other depending on what defense is shown, Defendants coordinated their playbook to respond and react based on what steps Debtors took to save the business.

## C. **Even if No Waiver Occurred, the A-2 Playbook Does Not Reflect the Seeking or Giving of Legal Advice.**

Even if the Court finds no waiver, the A-2 Playbook is not privileged to begin with because it merely contains business strategy rather than legal advice.

"[B]ecause the purpose of the privilege is to promote the dissemination of sound legal advice, the privilege will extend ***only to advice which is legal in nature***.  Where a lawyer provides non-legal business advice, the communication is not privileged." *Wachtel v. Health Net, Inc.*, 482

F.3d 225, 231 (3d Cir. 2007) (emphasis added); *Emmanouil v. Roggio*, 499 F. App'x 195, 199 (3d Cir. 2012) ("Excluded from the privilege's protection is any advice that is not legal in nature, such as business advice.").

Tellingly, during his deposition, Michael Carney testified that the A-2 Playbook represented "game theory" scenarios. Game theory is business strategy rather than legal advice. Further, the A-2 Playbook outlines strategy for not only Upfront, but also Breakwater individuals. One bullet point states, "Saif [Mansour] informs the company that if the A-2 does not close on Friday, Breakwater will accelerate the loan and begin seeking remedies at 8am on Monday." (Exhibit I). Further, on November 20, 2017, the A-2 Playbook contemplates Breakwater formally noticing the company, at "9:00am" that the loan was due in full. (*Id.*).

In short, there is nothing in the A-2 Playbook reflecting legal advice from Upfront's counsel to any of the Upfront Defendants. Rather, the A-2 Playbook outlines business scenarios and strategies to pursue in connection with taking control of the company.

### D. **The Upfront Defendants Waived the Attorney-Client Privilege Concerning Documents and Communications Relating to the A-2 Playbook.**

Given the nature and extent of the waiver (or the fact that the A-2 Playbook does not contain legal advice), Plaintiff is entitled to all documents and communications concerning the A-2 Playbook and related subject matter. Indeed, courts will find a subject matter waiver of all related documents and communications when the circumstances (on a case-by-case basis) support such a finding. *See, e.g., Murray v. Gemplus Intern., S.A.*, 217 F.R.D. 362, 366 (E.D. Pa. 2003) (finding subject matter waiver in connection with intentional disclosure of privileged communication); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 (Del. 1992); *Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393 (D. Del. 1994); *Chinnici v. Central Dupage Hosp.*

11

*Assoc.*, 136 F.R.D. 464, 465 (N.D. Ill. 1991) ("Production of some privileged documents waives the privilege as to all documents of the same subject matter.").

Here, the Upfront Defendants' privilege log demonstrates how a subject matter waiver finding is appropriate. Specifically, the entries below represent sixteen separate instances of Upfront and its counsel discussing a "Call with Breakwater counsel" that occurred at or near the time that Defendants were preparing the A-2 Playbook. These communications—from both the Upfront Defendants and the Breakwater Defendants—must be produced given (i) the Upfront Defendants' waiver of privilege concerning the A-2 Playbook, and (ii) the non-privileged nature of such communications. At a minimum, these and related communications should be submitted to the Court for an *in camera* inspection on whether a privilege exists concerning the entirety of the document.

| Begin Bates | End Bates | Date Sent | To | From | Cc | Bcc | Subject | Title | AttachCount | IsAttach | AttachNames | Privilege Asserted/Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UFV-033931 | UFV-033931 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033937 | UFV-033937 | 11/17/2017 | Michael Carney <michael@upfront.com> | Donald Lee <dlee@lkpgl.com> | Erika Reed <ereed@lkpgl.com> | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033944 | UFV-033944 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033961 | UFV-033961 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033966 | UFV-033966 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033972 | UFV-033972 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Erika Reed <ereed@lkpgl.com> | Donald Lee <dlee@lkpgl.com> | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033981 | UFV-033981 | 11/17/2017 | Donald Lee <dlee@lkpgl.com>, Erika Reed <ereed@lkpgl.com> | Michael Carney <michael@upfront.com> | | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033987 | UFV-033987 | 11/17/2017 | Michael Carney <michael@upfront.com>, Erika Reed <ereed@lkpgl.com> | Donald Lee <dlee@lkpgl.com> | | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-033991 | UFV-033991 | 11/17/2017 | Erika Reed <ereed@lkpgl.com> | Michael Carney <michael@upfront.com> | Donald Lee <dlee@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034004 | UFV-034004 | 11/17/2017 | Michael Carney <michael@upfront.com> | Donald Lee <dlee@lkpgl.com> | Donald Lee <dlee@lkpgl.com> | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034011 | UFV-034011 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034169 | UFV-034169 | 11/17/2017 | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | Donald Lee <dlee@lkpgl.com> | | RE: Call with Breakwater counsel | | 3 | N | Doc_154138386_v_1_Loot_Crate,_Inc_-_506_Bad_Actor_Certificate_-_Mark_s...docx;Doc_15415 3659_v_1_Loot_Crate,_Inc_-_506_Bad_Actor_Certificate_-_Upfront_V_L.P..docx;Loot_Crate,_-_Series_A-2_-_Schedule_of_Exceptions_-_LKP_Comments.doc | |
| UFV-034200 | UFV-034200 | 11/17/2017 | Michael Carney <michael@upfront.com> | Donald Lee <dlee@lkpgl.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034202 | UFV-034202 | 11/17/2017 | Michael Carney <michael@upfront.com> | Donald Lee <dlee@lkpgl.com> | Erika Reed <ereed@lkpgl.com> | | RE: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034204 | UFV-034204 | 11/17/2017 | Donald Lee <dlee@lkpgl.com> | Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Re: Call with Breakwater counsel | | 0 | N | | A/C |
| UFV-034206 | UFV-034206 | 11/16/2017 | Donald Lee <dlee@lkpgl.com> | Mark Suster <msuster@upfront.com>, Michael Carney <michael@upfront.com> | Erika Reed <ereed@lkpgl.com> | | Call with Breakwater counsel | | 0 | N | | A/C |

**E.  The Breakwater Defendants Waived All Communications Surrounding the "Carry the Water Email" by Intentionally Disclosing Privileged Information to the Upfront Defendants.**

Finally, the Breakwater Defendants intentionally disclosed privileged information to the Upfront Defendants in 2017 but have chosen to selectively disclose related information during this adversary proceeding.

The "purposeful disclosure" of purportedly privileged material to a third party waives the attorney-client privilege.  *See In re Chevron*, 633 F.3d 153, 165 (3d Cir. 2011).  Earlier this year, Chief Judge Sontchi found that a subject matter waiver had indeed occurred in connection with a memorandum referenced in documents where the privilege was waived through distribution.  *See Maxus Liquidating Trust v. YPF, S.A. (In re Maxus Energy Corp.)*, Case No. 18-50489, 2021 WL 924302, at **2-3 (Bankr. D. Del. Mar. 11, 2021) (Sontchi, J.).  There, the court relied on the Delaware Supreme Court's explanation of the "rule of partial disclosure," including that "disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications."  *Id.* (quoting *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 (Del. 1992)).

Here, the Breakwater Defendants disclosed the "Carry the Water" email to the Upfront Defendants in 2017.  Yet, in this adversary proceeding, the Breakwater Defendants have refused to produce the entirety of the Carry the Water email and all documents and communications relating to its subject matter.  This selective disclosure is precisely the type of unfairness the cases seek to avoid when a party chooses to disclose privileged information.  Accordingly, the Breakwater Defendants should be compelled to disclose the entirety of the Carry the Water Email chain along with any documents and communications relating to the same or similar subject matter.

13130389.v1

**F.  The Carney Deposition Should Continue to Discuss the A-2 Playbook.**

During the deposition of Michael Carney (the admitted author of the A-2 Playbook), Upfront's counsel refused to allow Mr. Carney to answer questions concerning the A-2 Playbook. For the reasons explained above, the Upfront Defendants' either waived any privilege surrounding the A-2 Playbook and/or the A-2 Playbook does not contain any legal advice whatsoever. Accordingly, Plaintiff's respectfully request that it be given leave to re-open Mr. Carney's deposition to specifically ask questions surrounding the A-2 Playbook and related subject matter and communications.

**III.**
**CONCLUSION**

For these reasons, the Court should find that (i) the Upfront Defendants waived the privilege (if any) that applies to the A-2 Playbook, (ii) the Upfront Defendants must produce all documents and communications relating to the A-2 Playbook, including the documents identified in the privilege log excerpt referenced in the Motion, and (iii) the Breakwater Defendants must produce the entirety of the Carry the Water email and all documents and communications relating to its subject matter.

13130389.v1

Dated: September 24, 2021
Wilmington, Delaware

Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

-   and   -

Joel B. Bailey, Esquire
Joshua L. Hedrick, Esquire
**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9625
Facsimile:  (214) 481-1844
E-mail: Josh@HedrickKring.com
E-mail: Joel@HedrickKring.com

-   and   -

Samuel M. Stricklin, Esquire
**STRICKLIN LAW FIRM, P.C.**
Palisade Central II
2435 North Central Expressway
Suite 1200
Richardson, Texas 75080
Telephone 972-2388687
E-mail: Sam.stricklin@stricklaw.pro

*Counsel for Plaintiffs*

13130389.v1