IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| Official Committee of Unsecured Creditors of Old LC, Inc., et al., for and on behalf of the estates of Old LC, Inc., *et al.*; | § | |
| *Plaintiff,* | § | |
| v. | § | Adv. No. 20-51002 (BLS) |
| Upfront V, LP, Breakwater Credit Opportunities Fund, L.P.; Upfront GP V, LLC; Mark Suster; Dana Kibler; Gregory Bettinelli; Saif Mansour; Aamir Amdani; Eric Beckman; Darrick Geant; and Joseph Kaczorowski | § | |
| *Defendants*. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF PURPORTEDLY PRIVILEGED DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiff Official Committee of Unsecured Creditors of Old LC, Inc. ("**Plaintiff**") files this *Reply in Support of its Motion to Compel Production of Purportedly Privileged Documents* (the "**Motion**"). In support thereof, Plaintiff respectfully shows the Court as follows:

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

# I.
# INTRODUCTION

The Upfront Defendants' Opposition violates the first law of holes: "If you find yourself in a hole, stop digging." Instead of climbing out of the hole, the Opposition digs deeper, relying on a sworn declaration that is materially inconsistent with the same witness's sworn deposition, and relying on a claim of "inadvertence" based on a timeline demonstrating otherwise. Therefore, given the numerous inconsistencies and irreconcilable assertions made by the Upfront Defendants, the Motion should be granted and their arguments must be rejected.

**A. Michael Carney's Sworn Declaration Provides Materially Different Testimony than His Sworn Deposition.**

In support of their Opposition, the Upfront Defendants rely-upon a sworn declaration that is materially different from the sworn deposition testimony of the very same witness, Michael Carney. Michael Carney is purportedly the author of the A-2 Playbook.

The Upfront Defendants attach the sworn *Declaration of Michael Carney* (the "**Carney Declaration**") to support the notion that the A-2 Playbook is protected by the attorney-client privilege. However, as the table below demonstrates, paragraph 3 of the Carney Declaration is materially different from Mr. Carney's deposition testimony given merely one month before:

| **Carney's Sworn Inconsistencies** ||
|---|---|
| **Carney Sworn Declaration (Oct. 13, 2021)** | **Sworn Deposition (Sept. 16, 2021) (Ex. A)** |
| On September 15, 2021, "I informed my counsel that I prepared a document known as the A-2 Playbook on or about November 15, 2017." (Carney Decl. ¶ 3). | "Q: Did you create a document called A-2 playbook? <br><br> A: I do not – I don't know. There were lots of documents created in this – in this time period." (Carney Dep., at 143:23-144:2) |
| The A-2 Playbook "was based on a conversation I had with Upfront's outside counsel Donald Lee regarding the chain of events that could transpire if Breakwater | "Q: To your recollection, did the A-2 playbook contain any legal advice whatsoever? <br><br> A: I don't have any specific recollection of what the A-2 playbook contained at all." (Carney Dep., at 144:11-14). |

2

| **Carney's Sworn Inconsistencies** ||
|---|---|
| **Carney Sworn Declaration (Oct. 13, 2021)** | **Sworn Deposition (Sept. 16, 2021) (Ex. A)** |
| proceeded with their contractual rights and remedies." (Carney Decl. ¶ 3). | |
| The A-2 Playbook's substance "was conveyed by Mr. Lee to me verbally, and that I transcribed the information provided and memorialized that conversation as the 'Lootcrate A-2 Playbook.'" (Carney Decl. ¶ 3) | "Q: Do you recall if the A-2 playbook was created in concert between you and Mr. Don Lee?<br><br>A: You're asking me to recall a specific document that I haven't seen or thought about in four years, so without seeing the document, I'm not sure I could comment specifically on what was in it or – or its context." (Carney Dep., at 145:1-7). |

As this table demonstrates, one paragraph of Mr. Carney's declaration (Carney Decl. ¶ 3) contains at least three statements that are materially contrary to what Mr. Carney testified to in his sworn deposition. Any suggestion that Mr. Carney suddenly remembered these facts between his deposition and his declaration is unpersuasive. The Opposition twice describes Mr. Carney as "immediately" telling the Upfront Defendants' counsel about the circumstances of the A-2 Playbook's creation during his deposition preparation. (Opposition at 2, ¶ 8) ("When the topic of the A-2 Playbook arose, Mr. Carney immediately stated that he prepared the document on or about November 15, 2017 based on a conversation he had with Upfront's outside counsel Donald Lee."). Therefore, this is not a situation where the witness remembered something between his deposition and declaration; rather, this is a situation where a witness will say whatever is needed (truthful or not) to further his position.

Given these material inconsistencies, Mr. Carney's words cannot be trusted. Moreover, these inconsistencies further demonstrate the necessity for Mr. Carney's deposition to continue so that he can be properly examined concerning all circumstances surrounding the A-2 Playbook and his materially inconsistent testimony under oath.

B. **The Upfront Defendants' Own Timeline Demonstrates that Production of the A-2 Playbook was Not Inadvertent.**

In addition to relying on materially inconsistent sworn statements, the Upfront Defendants' argument as to inadvertence is similarly devoid of credibility based on the timeline provided in the Opposition.

According to the Declaration of Cia Mackle (the "**Mackle Declaration**"), the Playbook Transmittal Email was reviewed and tagged as privileged on May 28, 2020 at 10:11 a.m. (Mackle Declaration ¶¶ 6-7). On September 14, 2020, the Upfront Defendants produced their privilege log that included entries reflecting the "Playbook Transmittal Email." (Motion at Ex. Q). On September 15, 2020—only one day after producing the privilege log identifying the Playbook Transmittal Email and four months after reviewing the Playbook Transmittal Email—the stand-alone A-2 Playbook was reviewed and produced. (Mackle Declaration ¶¶ 8-9). The same lawyer that reviewed the Playbook Transmittal Email and tagged that document as privileged also reviewed the stand-alone A-2 Playbook.

Notwithstanding this timeline of events provided by the Upfront Defendants, the Opposition asserts, "[t]he only way PSZJ would have been able to determine if the A-2 Playbook was privileged would have been to ask the author of each document not clearly identifiable as privileged or non-privileged whether any such document was, in fact, privileged." (Opposition ¶ 22). Similarly, the Upfront Defendants assert, "Plaintiff's argument that Upfront delayed in clawback ignores that PSZJ had no reasonable way of making a privilege determination prior to September 15, 2021. (Opposition ¶ 27).

However, based on the Upfront Defendants' own timeline, these statements are objectively false. Specifically, the Upfront Defendants purportedly knew that the A-2 Playbook was privileged on May 28, 2020 when the Playbook Transmittal Email was reviewed and tagged as

privileged.  The Upfront Defendants presumably reinforced this privilege decision when they produced their privilege log on September 14, 2020.  Therefore, the Upfront Defendants' assertion that the "only way" for them to know that the A-2 Playbook was privileged was by asking the author of each document for the circumstances of its creation is objectively false.  Relatedly, the assertion that the Upfront Defendants could sit idly as the A-2 Playbook was referenced repeatedly in pleadings, depositions, and media articles without any knowledge of its purportedly privileged nature stretches the bounds of credulity.

Therefore, the Upfront Defendants' own timeline of events undercuts their argument on the allegedly inadvertent production of the A-2 Playbook.  The Upfront Defendants' assertion that they clawed-back the document "within hours of discovering the privileged nature" of the A-2 Playbook cannot be reconciled with the purported fact that the Playbook Transmittal Email was tagged as privileged on May 28, 2020.[2]  Thus, the Upfront Defendants' arguments should be rejected.

### C. The Legal Factors and Case Law Weigh in Favor of Finding Waiver

Finally, the Upfront Defendants' discussion of the factors for determining inadvertent disclosure and the case law relied-upon by the Upfront Defendants further demonstrate how the Motion should be granted.

Specifically, four of the five factors identified by the Upfront Defendants support the Committee's waiver arguments.  (Opposition ¶ 19).  The number and extent of disclosure of the A-2 Playbook could not be broader.  As explained in the Motion, the A-2 Playbook has been

---

[2] From a timeline perspective, the Upfront Defendants assert that the adversary proceeding is "in its infancy with an answer having been filed within days of the filing of the Motion to Compel." (Opposition at 4).  Given the procedural posture of this case, such an assertion is comical.  The case was filed in November 2020, the parties have exchanged tens of thousands of documents, multiple depositions have occurred, the Breakwater Defendants have filed a Motion for Summary Judgment that resulted in a dispute concerning depositions, and the Upfront Defendants' Motion to Dismiss has been fully briefed and denied by the Court.  Indeed, to make such an assertion flies in the face of reality.

5

repeatedly discussed in pleadings, attached as an exhibit to various briefing, marked and discussed in depositions, and referenced in media articles. (Motion at 2(i)-(vi)). The delay and measures to rectify the disclosure further demonstrates waiver based on the timeline discussed above in section (II)(B) of this Reply. And the interests of justice substantially favor waiver given the A-2 Playbook's importance in the litigation. Indeed, while the Upfront Defendants assert that the A-2 Playbook does not reflect any coordination or conspiracy between the Upfront Defendants and the Breakwater Defendants, the substance of the A-2 Playbook, the nature of the privilege log entries around the same time period, and other documents (such as the Carry the Water Email) substantially demonstrate otherwise. Therefore, the Upfront Defendants' assertion that the A-2 Playbook does not and cannot show coordination and conspiracy between the Defendants in this case should not be accepted.

The tenuous nature any legal support from the Upfront Defendants' arguments is also demonstrated through their citations to numerous cases where the courts *refused* to compel the return of inadvertently produced, privileged documents. *See, e.g., Wise v. Washington County*, No. 10-1677, 2013 WL 4829227 (W.D. Pa. Sept. 10, 2013) (finding waiver); *Gloucester Township Housing Auth. v. Franklin Square Assocs.*, 38 F. Supp. 3d 492 (D.N.J. 2014); *CIBA-Geigy Corp. v. Sandoz Ltd.*, 916 F. Supp 404 (D.N.J. 1995); *Advanced Medical, Inc. v. Arden Med. Sys., Inc.*, No. 87-3059, 1988 WL 76128 (E.D. Pa. July 18, 1988); *Gilson v. Pa. State Police*, No. 12-cv-00002, 2015 WL 403181 (W.D. Pa. 2015). As particularly relevant here, one case quoted from Wigmore on Evidence, explaining, "[a] privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not." *Advanced Med.*, 1988 WL 76128, at

*4 (quoting 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961)).  Here, even if the Court assumes the A-2 Playbook is privileged (which it is not), the nature of the disclosure and the inherent unfairness in permitting any clawback of the document substantially weighs in favor of granting the Committee's Motion.

### III.
### CONCLUSION

For these reasons, the Court should find that (i) the Upfront Defendants waived the privilege (if any) that applies to the A-2 Playbook, (ii) the Upfront Defendants must produce all documents and communications relating to the A-2 Playbook, including the documents identified in the privilege log excerpt referenced in the Motion, and (iii) Michael Carney's deposition shall continue once documents are produced on a date to be agreed between the parties.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 19, 2021
Wilmington, Delaware

Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

- and -

Joel B. Bailey, Esquire
Joshua L. Hedrick, Esquire
**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9625
Facsimile:  (214) 481-1844
E-mail: Josh@HedrickKring.com
E-mail: Joel@HedrickKring.com

- and -

Samuel M. Stricklin, Esquire
**STRICKLIN LAW FIRM, P.C.**
Palisade Central II
2435 North Central Expressway
Suite 1200
Richardson, Texas 75080
Telephone 972-2388687
E-mail: Sam.stricklin@stricklaw.pro

*Counsel for Plaintiffs*